UNITED STATES of America, Appellee,

v.

Walter V. JACKSON,
Defendant, Appellant.

No. 89-1040.

United States Court of Appeals,
First Circuit.

Heard April 3, 1990.

Decided Nov. 1, 1990.

John P. Slattery, by Appointment of the Court, with whom Ronald A. Wysocki was on brief for defendant, appellant.

Paul V. Kelly, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief for the U.S.

Before BREYER, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Following a five-day jury trial, defendant Walter Jackson was convicted of possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1).[1] Under the Armed Career Criminal Act, 18 U.S.C. § 924(e), Jackson was sentenced to serve fifteen years in prison. On appeal, he asserts that the district court committed reversible error in refusing to suppress the firearm, in permitting the government to withhold the identity of its informant, and in admitting into evidence post-arrest statements which Jackson made to law enforcement officers. Lastly, Jackson maintains that he was denied effective assistance of counsel. As we conclude that all claims are without merit, we affirm.

I

After receiving neighborhood reports concerning suspicious activity at a residence in Hyannis, Massachusetts, local police established an intermittent surveillance which confirmed that various persons, among them convicted felons known to have had past involvement with illegal drugs, frequently would drive up to the residence, enter for short periods, then drive away. During the evening of March 8, 1988, Jackson, known to the police as a convicted felon with an extensive criminal record that included drug law violations, was observed entering the residence. Soon after, the police learned from a confidential informant that Jackson had been seen conducting a drug transaction inside the same residence and that he was in possession of a handgun.

While on surveillance the following evening, the police received information from

---

1.  It shall be unlawful for any person who ... has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm ... which has been shipped or transported in interstate or foreign commerce.
    18 U.S.C. § 922(g)(1).

the same informant that Jackson again had been observed selling cocaine inside the Hyannis residence, while in possession of a gun. At approximately 1:30 a.m., Jackson was observed leaving the residence in the company of a male, later identified as Anthony Edwards, and a female, Stephanie Holmes, Jackson's sister. The three entered a vehicle and began to leave, with Jackson driving. Two police cruisers, their blue lights flashing, pulled up behind the Jackson vehicle which then took what could be considered evasive action. The police cruisers blocked the Jackson vehicle and approached it with weapons drawn. As they did so, the police saw Jackson and Edwards make furtive hand movements in the front seat. The police ordered the occupants to place their hands on the dashboard. The suspects did not immediately comply.

The police ordered Edwards out of the car, pat-frisked him, and discovered a small packet containing a white substance which Edwards identified as cocaine. Edwards, Jackson and Holmes were arrested. Edwards and Jackson were handcuffed and placed in the back of a police cruiser. The police then searched the passenger compartment of the vehicle and seized the firearm here in question, and a small baggie of cocaine, from inside the console between the front seats. After Jackson was arrested and administered *Miranda* warnings, *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he admitted that the cocaine belonged to him, but said the firearm did not. Jackson repeated the same admission several days later.

## II

Jackson asserts that the district court erroneously denied the motion to suppress the firearm. He argues that the police lacked probable cause to arrest him; therefore the evidence discovered during the automobile search conducted after the unlawful arrest must be suppressed as the tainted fruits of the unlawful arrest. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The district court ruled there was probable cause to arrest Jackson before the vehicle was stopped; hence the search and seizure were lawful. We uphold the denial of the motion to suppress, on an alternative ground.

■ These police actions—blocking the Jackson vehicle and frisking Edwards—did not transcend an investigatory stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). The police may conduct an investigatory stop by blocking the egress of a vehicle in which a criminal suspect is riding, *see, e.g., United States v. Streifel*, 781 F.2d 953, 961 n. 15 (1st Cir.1986); *United States v. Vargas*, 633 F.2d 891, 896 (1st Cir.1980); *United States v. Jones*, 759 F.2d 633, 637 (8th Cir.1985), and may approach the vehicle with weapons at the ready on a reasonable suspicion that its occupants are armed, *see, e.g., United States v. Greene*, 783 F.2d 1364 (9th Cir.1986); *Jones*, 759 F.2d at 638; *United States v. Jackson*, 652 F.2d 244, 249–50 (2d Cir.1981).

■ There is no evidence that anything that occurred prior to the formal arrest of Edwards and Jackson was inconsistent with a valid investigatory stop. Although the government concedes that the police stopped the vehicle for the purpose of arresting Jackson, the officers' intention, in itself, would not convert an investigatory stop into an arrest. *Vargas*, 633 F.2d at 896 n. 10 ("That the agents subjectively intended to effect an arrest should not be controlling when the objective circumstances are consistent with an investigatory stop."). Thus, neither the manner of effecting the investigatory stop, nor the officers' intention to effect an arrest, converted the present investigatory stop into an arrest. *See Jackson*, 652 F.2d at 250 ("we decline to find that an arrest occurred solely because of [the officers'] subjective belief").

■ We now examine whether the vehicle search incident to the investigatory stop was reasonable under the *Terry* doctrine. Our review is directed at two inquiries: first, whether the investigatory

stop was justified at its inception; second, whether the conduct of the officers, after the stop and prior to any arrest, was "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985); *United States v. Lott*, 870 F.2d 778, 783 (1st Cir.1989) ("In reviewing the reasonableness of a *Terry* stop, a court must consider all of the relevant circumstances, which are not to be dissected and viewed singly; rather they must be considered as a whole.") (quoting *United States v. Gilliard*, 847 F.2d 21, 24 (1st Cir.1988)).

An investigatory stop is permissible on a reasonable suspicion that a "person *has been*, is, or is about to be engaged in criminal activity." *United States v. Hensley*, 469 U.S. 221, 227, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985) (quoting *United States v. Place*, 462 U.S. 696, 702, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983) (emphasis in original)); *see also United States v. Soule*, 908 F.2d 1032, 1034–35 (1st Cir.1990).

The *Hensley* standard was satisfied in the present case. Although the police possessed no eyewitness evidence of criminal activity, except through their informant, "a series of acts, each of them perhaps innocent," may, "taken together," raise a reasonable suspicion warranting further investigation. *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1 (1989) (quoting *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880–81). Prior to stopping the Jackson vehicle, the police possessed reliable information from neighborhood resi-

dents concerning suspicious activities at the Hyannis house. The information was confirmed on at least three occasions through intermittent surveillance conducted by an officer with nine years' experience in the investigation of drug cases. The police observed that known felons, with past involvement in illicit drug activities, were frequenting the Hyannis house. The police were aware of Jackson's extensive criminal record, including his history of illegal drug activity. In addition, the confidential informant provided the police with detailed information concerning Jackson's personal participation in two drug transactions at the Hyannis house that evening.[2]

Whether or not the cogency of the information possessed by the police prior to the investigatory stop amounted to probable cause for Jackson's arrest, as the district court found, there can be no doubt that it raised the requisite reasonable suspicion for an investigatory stop. See *id.* 109 S.Ct. at 1585 ("[T]he level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause.").

■ We conclude, furthermore, that the nature and scope of the police actions, subsequent to the lawful investigatory stop and prior to any arrest, were reasonably related to the suspicious circumstances which warranted the stop. See *Michigan v. Long*, 463 U.S. at 1049–50, 103 S.Ct. at 3480–81; *Pennsylvania v. Mimms*, 434 U.S. 106, 110–111, 98 S.Ct. 330, 333–34, 54 L.Ed.2d 331 (1977) (per curiam); *Lott*, 870 F.2d at 783; *Gilliard*, 847 F.2d at 24. There was good reason to suspect that the occupants of the Jackson vehicle were arm-

---

**2.** Jackson argues that the information provided by the informant should not be considered because there was no showing that the informant was credible or reliable. On the contrary, the district court found that the informant had supplied "specific, detailed information" in the past and was a source whom the police had good reason to regard as "reliable." There is nothing in the record to suggest that this finding was clearly erroneous. See *United States v. Cruz Jimenez*, 894 F.2d 1, 7 (1st Cir.1990) (factual findings on suppression issues reviewed under "clearly erroneous" standard).

Jackson contends that the magistrate, at the suppression hearing, improperly limited the scope of cross-examination aimed at obtaining

disclosure of the informant's identity for the purpose of testing his reliability. *See* Section III *infra*. We find no error. The government has an important interest in maintaining the confidentiality of its informers' identities. Further, a defendant's legitimate interest in testing the reliability of the informant is more limited in these circumstances, because "a lesser showing of the reliability of an informant is required to support the reasonable suspicion which is a prerequisite for an investigatory stop than is needed to support probable cause for a search [or an arrest]." *United States v. Childress*, 721 F.2d 1148, 1150 (8th Cir.1982); *accord United States v. Sierra–Hernandez*, 581 F.2d 760, 762 (9th Cir.1978).

ed and dangerous. The officers were informed that Jackson, a known felon, was seen conducting two drug transactions at the Hyannis house, while in possession of a firearm. Furthermore, law enforcement officers know from experience that firearms are often found in the presence of illegal drugs, *see, e.g., United States v. Walters*, 904 F.2d 765, 769 (1st Cir.1990) ("in drug trafficking[,] firearms have become 'tools of the trade' "); *accord United States v. Green*, 887 F.2d 25, 27 (1st Cir. 1989).

■ Once the Hyannis police discovered the cocaine concealed on Edwards's person there was probable cause to arrest Edwards, and the police were permitted to search the passenger compartment of the automobile in which Edwards was a passenger. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Thus, the search of the console and the seizure of the gun did not violate the fourth amendment. Finally, the gun was admissible against Jackson. *See Hensley*, 469 U.S. 221, 105 S.Ct. 675 (evidence discovered and seized as a result of a lawful automobile search, even a search predicated on the arrest of a passenger, is admissible against the driver). *Compare United States v. Lochan*, 674 F.2d 960, 966 (1st Cir.1982) (reasonable to infer that driver knew contraband was in vehicle).

### III

■ Jackson asserts that the district court abused its discretion by refusing to compel the government to divulge the identity of its informant. *See United States v.*

---

3. Although we conclude that the validity of the vehicle search is independently based, the informant's credibility and reliability bear on the evidentiary predicate for the *Terry* stop as well.

4. Jackson relies entirely on *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), which held that the informer's privilege must yield where "the disclosure of an informer's identity ... is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause," *id.* at 60, 77 S.Ct. at 628. However, *Roviaro* "involved the informer's privilege, not at a preliminary hearing to determine probable cause for an arrest or search, but at the trial itself where the issue was

---

*De Los Santos*, 810 F.2d 1326, 1332–33 (5th Cir.1987). Conceding a legitimate governmental interest in safeguarding the security of police informants, Jackson nevertheless contends that disclosure was necessary to enable him to test the informant's "reliability" and "credibility" which were critical to the integrity of the government's demonstration of probable cause for the arrest.[3] On *de novo* review, the district court accepted the magistrate's determination that disclosure was unwarranted since Jackson's request was based on "mere speculation" that disclosure would be helpful.[4]

The Supreme Court has never determined that due process requires disclosure of an informant's identity at a suppression hearing; rather, the defendant's interest in disclosure at the suppression stage is less than at trial. *See United States v. Raddatz*, 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980). ("[A]lthough the Due Process Clause has been held to require the Government to disclose the identity of an informant at trial, provided the identity is shown to be relevant and helpful to the defense, *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957), it has never been held to require the disclosure of an informant's identity at a suppression hearing."). Similarly, "the Court in the exercise of its power to formulate evidentiary rules for federal criminal cases has consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, *let alone in a preliminary hearing to determine probable cause for an arrest or search.*" *McCray,*

---

the fundamental one of innocence or guilt." *McCray v. Illinois*, 386 U.S. 300, 309, 87 S.Ct. 1056, 1061, 18 L.Ed.2d 62 (1967).

Jackson simply avers that disclosure of the informant's identity *might* indicate that the informant provided unreliable information to the police. There is no clue to the rationale, much less a proffer of evidence, supporting Jackson's conjecture. Even in a trial setting, "mere speculation as to the usefulness of the informant's testimony to defendant is insufficient to justify disclosure of his identity." *United States v. Estrella*, 567 F.2d 1151, 1153 (1st Cir.1977). A different rule would extinguish the efficacy in the informer's privilege.

386 U.S. at 312, 87 S.Ct. at 1063 (emphasis added). Moreover, quoting with approval, the Supreme Court observed in *McCray* that " 'it should rest entirely with the judge who hears the motion to suppress to decide whether *he* needs such disclosure as to the informant in order to decide whether the officer is a believable witness.' " *Id.* at 308, 87 S.Ct. at 1061 (quoting *State v. Burnett,* 42 N.J. 377, 201 A.2d 39 (1964) (emphasis added). *See also* 1 W. LaFave, *Search and Seizure* (2d ed. 1987) § 33(g) at 703 ("Appellate decisions reversing a trial judge's denial of disclosure are extremely rare and typically involve a situation in which ... highly unusual circumstances are present.") (footnote omitted).

Where an informant's tip is employed not to weigh guilt, or even probable cause for a warrantless arrest, but simply to determine whether there was sufficient suspicion to warrant an investigatory stop, a defendant's legitimate interest in the identity of the informant must be considered commensurately reduced. We find no reason to disturb the district court's decision to deny disclosure in these circumstances.

## IV

We next consider whether certain admissions were coerced in violation of Jackson's constitutional rights.[5] Jackson admitted to law enforcement officers that he owned the bag, containing the cocaine and the firearm, which was seized from the console. Although Jackson admitted that the cocaine also belonged to him, he told the police that the firearm did not, but that Edwards had put it in the bag just prior to the stop. Jackson claims that these statements were involuntary, hence inadmissible, because the police exerted psychological pressure by informing him, during an interrogation about the ownership of the firearm, that his sister was under arrest for a gun violation. *See Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9

L.Ed.2d 770 (1963) (confession coerced by psychological pressure held involuntary).

An involuntary statement violates due process and its admission into evidence mandates vacation of the conviction even though other evidence in the case would have been sufficient to convict. *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964). The voluntariness of an admission depends on "whether the will of the defendant [was] overborne so that the statement was not his free and voluntary act, and that question [is] to be resolved in light of the totality of the circumstances." *Bryant v. Vose,* 785 F.2d 364, 367–68 (1st Cir.1986), citing *Procunier v. Atchley,* 400 U.S. 446, 453, 91 S.Ct. 485, 489, 27 L.Ed.2d 524 (1971); *see also United States v. Holmes,* 632 F.2d 167, 168–69 (1st Cir.1980).

The burden rests with the government to prove voluntariness by a preponderance of the evidence, *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972); *Holmes,* 632 F.2d at 169. The reviewing court must " 'examine the entire record and make an independent determination of the ultimate issue of voluntariness.' " *United States v. Bienvenue,* 632 F.2d 910, 913 (1st Cir.1980) (quoting *Beckwith v. United States,* 425 U.S. 341, 348, 96 S.Ct. 1612, 1617, 48 L.Ed.2d 1 (1976)).

Jackson's involuntariness claim is based exclusively on the contention that news of his sister's arrest exerted psychological pressure sufficient to overcome his will and coerce the admission that he owned the bag in which the cocaine and gun were found. Our review convinces us that Jackson's statements were voluntary.

As the Supreme Court indicated almost a century ago, in a case still cited as controlling precedent on the voluntariness of confessions, for a confession to be voluntary it "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight,

---

5. Jackson made statements to law enforcement officers on two occasions: to the local police, shortly after his arrest; and, later, to an agent of the Bureau of Alcohol, Tobacco and Firearms. Jackson argues that the statements made on the first occasion were involuntary and that the later statements were "fruits of the poisonous tree." *See Wong Sun,* 371 U.S. 471, 83 S.Ct. 407.

nor by the exertion of any improper influence ...", *United States v. Bram*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897). *See, e.g., Malloy v. Hogan*, 378 U.S. 1, 6–7, 84 S.Ct. 1489, 1492–93, 12 L.Ed.2d 653 (1964); *Miranda*, 384 U.S. at 461–62, 86 S.Ct. at 1620–21; *Brady v. United States*, 397 U.S. 742, 754–55, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970); *Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 203–04, 50 L.Ed.2d 194 (1976) (all citing to *Bram*, on voluntariness of confession).

■ In the instant case there is no evidence that Jackson was subjected to direct threats or promises. Moreover, even if we were to assume that the police did use an implied "threat" or "promise" that Jackson's sister might be caused or spared harm, depending on whether or not Jackson admitted ownership of the firearm, we still could not conclude that his will was overborne. Although *Bram* has not been overruled, it has been modified. The Congress and the courts have indicated that to determine voluntariness it is necessary to look at the totality of the circumstances, *including* any promises or threats made by police officers or the prosecution, in order to see whether the will of the accused was overborne. *See, e.g., Bryant v. Vose*, 785 F.2d at 367–68; 18 U.S.C. § 3501(b) ("The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession ...").

Jackson relies in particular on *Lynumn v. Illinois*, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963), and *United States v. Tingle*, 658 F.2d 1332 (9th Cir.1981), for the proposition that psychological coercion generated by concern for a loved one may make an admission involuntary. Like the district court, we find *Lynumn* and *Tingle* distinguishable. The defendants in *Lynumn* and *Tingle*, both mothers, were coerced by threats that their children would be taken from them unless the defendants cooperated with the police. There was evidence also that the defendants in both cases may have been more susceptible to psychological coercion than defendants more familiar with the criminal justice system.[6] In this case, any psychological pressure exerted on Jackson related to an adult sibling, not a child. There is no evidence that an especially close relationship existed between Jackson and his sister, or that Jackson was unusually susceptible to psychological coercion on that account or any other, particularly in light of Jackson's very substantial previous experience with the criminal justice system. The totality of these circumstances indicate that Jackson did not lose volitional control, nor was his will overborne.[7]

## V

■ The defendant lastly asserts a sixth amendment ineffective assistance claim based on trial counsel's failure to object, or to request a cautionary instruction, when the prosecutor mentioned, during the government's opening statement, that the confidential informant had told a police officer that Jackson was involved in a drug transaction at the Hyannis house on the night of the arrest. The district judge immediately interrupted and, at a brief sidebar conference with counsel, again admonished the prosecutor not to relate further hearsay information from the confidential informant.[8]

---

6. For instance, in *Lynumn*, 372 U.S. at 534, 83 S.Ct. at 920, the Court noted that the defendant "had had no previous experience with the criminal law." In *Tingle*, 658 F.2d at 1334, the court said that the defendant was "noticeably shaking" and "continued to cry for at least ten minutes" before she confessed.

7. We agree with the district court that Jackson's involuntariness claim more closely resembles those unsuccessfully raised in other cases merely on the strength of a stated desire to protect a loved one. *See United States v. Jordan*, 570 F.2d 635, 643 (6th Cir.1978) (statements motivated in part by desire to protect wife, held: voluntary); *United States v. Charlton*, 565 F.2d 86, 88–89 (6th Cir.1977) (father's confession to protect son, not coerced).

8. Jackson suggests that the challenged statement amounted to prosecutorial misconduct because it was a "deliberate mischaracterization" of the confidential informant's report. We find no mischaracterization. Nevertheless, in view of the fact that the prosecutor was forbidden by the court, in advance, from making any reference in his opening statement to anything the

Although most ineffective assistance claims "require the independent development of evidence outside of, and collateral to, the criminal proceeding," we recognize that some ineffective assistance claims are reviewable on the trial record alone. *Brien v. United States,* 695 F.2d 10, 13 (1st Cir. 1982). We believe that this is such a case.

A sustainable "ineffective assistance" claim "must show that [the] attorney's performance was deficient and ... that [that] deficiency prejudiced [the] defense." *United States v. Walters,* 904 F.2d at 771 (quoting *United States v. Caggiano,* 899 F.2d 99, 101 (1st Cir.1990) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Jackson succeeds on neither showing.

First, defense counsel's failure to object to the prosecutor's remark and to request a curative instruction seems consistent with a reasonable tactical decision to minimize any harm the prosecutor's remark may have caused, by not inviting further attention to it. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [when] the challenged action 'might be considered sound ·trial strategy.'" (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). *See also Walters,* 904 F.2d at 772 (assistance not ineffective if counsel's failure to object could have been result of reasonable decision not to emphasize evidence adverse to client).

There was no need for defense counsel to object. The district court, on its own initiative, immediately interrupted the prosecutor's opening statement. At sidebar, the court left no doubt that there was to be no recurrence of the prosecutor's conduct.

Thus, the court accomplished all that an objection by defense counsel could have achieved, but without unnecessarily highlighting the prosecutor's improper statement to the jury. In these circumstances we cannot say that it was not a reasonable trial tactic on the part of defense counsel to opt against highlighting the informant's tip by effectively prompting its reiteration in the course of a curative instruction.

The second element in the *Strickland* test entails the establishment of " 'a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.' " *Walters,* 904 F.2d at 771–72 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). During trial, the government presented uncontroverted evidence that the gun was found inside the bag which contained the cocaine admittedly belonging to Jackson. The bag was seized from the console beside the driver's seat in the vehicle Jackson was driving. Anthony Edwards testified at trial that he saw Jackson buy the gun and saw it in Jackson's possession that evening. Jackson admitted knowledge that the gun was in the bag. Thus, there was overwhelming evidence that Jackson was either in actual or constructive possession of the firearm seized by the police. *See United States v. Lamare,* 711 F.2d 3, 5 (1st Cir.1983). *See also Lochan,* 674 F.2d at 966. There is no "reasonable probability" that the claimed error on the part of trial counsel affected the outcome of Jackson's trial.

*The district court judgment is affirmed.*

---

informant told the officers, there can be no doubt that the prosecutor should have steered well clear of these remarks.

We review only for "plain error," due to Jackson's failure to object at trial. *See* Fed.R. Crim.P. 52(b); *United States v. Paz Uribe,* 891 F.2d 396, 400 (1st Cir.1989); *United States v. Giry,* 818 F.2d 120, 133 (1st Cir.1987). We are satisfied that no significant prejudice resulted. *See, e.g., United States v. Ingraldi,* 793 F.2d 408,

416 (1st Cir.1986) (no prosecutorial misconduct unless statement resulted in prejudice). We note further that the district court's preliminary jury instructions and its final charge made clear that nothing counsel said during their opening or closing statements was to be considered evidence. Given the overwhelming weight of the evidence against Jackson, the contention that this isolated statement prejudiced the jury is implausible.