USA v. Doward                          CR-93-19-B      05/25/93

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE


United States of America

    v.                                    Criminal No. 93-19-01-B

John R. Doward


**O R D E R**


This matter is before the court on the motions of the defendant, John R. Doward, filed on April 19, 1993, to suppress evidence seized, and statements made, at the time of his arrest on October 18, 1992.  Doward was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  A hearing was held on his motions to suppress on May 4, 1993, at which testimony was given by Officer Robert Oxley, Detective Clark Karolian, and Michelle Vanagel.  For the reasons stated below, the court denies both motions (document nos. 22-23).


**I.  FACTS**

The facts relevant to the disposition of these motions are largely uncontested.  On October 18, 1993, at approximately 7:00

p.m., two Manchester Police Officers, James Tareco and Robert Oxley, were on a routine foot patrol in a high-crime area when they observed a 1987 two-door Ford Mustang hatchback turn left at an intersection through a red traffic light. The officers ordered the vehicle to stop and asked the driver for his license. The driver, in response, produced a Florida operator's license and identified himself as John Doward.

While Officer Tareco was writing out a traffic citation, Officer Oxely called police headquarters to determine if any outstanding warrants existed for Doward's arrest. Doward and a passenger remained in the car. While waiting for the results of the warrant check, Doward stated that he might be the subject of an invalid warrant from Ohio. Moments later, at approximately 7:10 p.m., Officer Oxely received word from headquarters that Doward was wanted on a valid Ohio warrant. Doward was removed from the car, handcuffed, and placed under arrest. The passenger was also removed from the Mustang, but he was not arrested and was allowed to remain on the sidewalk next to the vehicle.

Seconds after the arrest, a police cruiser arrived on the scene, parking approximately seven feet from Doward's automobile. As Officer Oxely placed Doward in the cruiser, Officer Tareco began a warrantless search of Mustang. After a brief search of

2

the vehicle's front interior, Officer Tareco began searching the hatchback area. Moments later, a prison van arrived and transported Doward to the police station.

After Doward was removed from the scene, Officer Tareco told Officer Oxely that he had discovered a gun cleaning kit and several boxes of ammunition in one of two suitcases located in the hatchback area. At this point, Doward's adult daughter, Michelle Vanagel, stepped forward from the crowd and asked one of the police officers what they were doing with her car. Vanagel had been looking for her father and had arrived after Doward had been taken to the police station. When Vanagel was questioned by the police, she admitted that she owned the car, but she stated that her father owned the suitcases. Officer Oxely then searched the second suitcase and found a weapon and holster. These items were discovered some thirty seconds after Doward was transported to the station. The entire search, which began immediately after Doward was arrested, lasted approximately three minutes.

Doward was taken to the Detective Division of the Manchester Police Department for an interview with Detective Clark Karolian. After obtaining his history, Detective Karolian read Doward his Miranda rights. As he read each right, Detective Karolian asked Doward if he understood the significance of the right. Doward

3

verbally acknowledged that he did and executed a waiver of rights form. Doward then admitted that he kept the gun with him for protection.

At the conclusion of the oral interrogation, Detective Karolian gave Doward the option of drafting a written statement so that there would be no misunderstanding as to what transpired. Doward wrote the following:

> I John Doward had a .38 caliber revolver in my [possession] for personal protection. I had no [intention] of committing any type of crime. . . . The hand gun is not stolen and all I have it for is for my own safety. . . . I kept the hand gun in my suitcase in the back of the car . . . . For me to get the weapon I had to get out of the car. The weapon was not reachable at any time from the driver['s] seat.

As Doward was writing this statement, Detective Karolian decided to run a criminal history check on Doward. As he left the interview room, Detective Karolian was approached by Officer Tareco, who stated that Doward's daughter had also been arrested because there were two outstanding warrants on her from Derry District Court. Doward's criminal history check revealed that he had a lengthy record of arrests and convictions.

The entire interrogation of Doward lasted approximately thirty minutes. Detective Karolian testified that Doward was coherent, cooperative, talkative, and at ease, and did not appear

4

to be under the influence of drugs or alcohol.

## II.  **DISCUSSION**

Doward seeks suppression of the evidence seized from the hatchback area of the car because the search was not contemporaneous with the arrest and was not within the "narrow compass" of the passenger compartment.  Doward also seeks to suppress the statements made to Detective Karolian because, according to Doward, the Detective stated that if he did not confess to owning the gun, the police would bring a weapon charge against his daughter, Michelle Vanagel.  The court does not find these arguments persuasive.

A.  Automobile Search

Under New York v. Belton, when an officer "has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and examine "the contents of any containers found within the passenger compartment."  453 U.S. 454, 460 (1981); accord United States v. Rojo-Alvarez, 944 F.2d 959, 970 (1st Cir. 1991).  Doward does not contest that he was subject to a lawful custodial arrest.  Instead, he argues that the hatchback area is not a "passenger compartment" for purposes

5

of <u>Belton</u>. Next, he claims that because he was outside the vehicle, handcuffed, and taken from the scene, the weapon was no longer in an area within his immediate control and therefore was not properly seized incident to arrest. The court addresses each argument in turn.

1. <u>Passenger compartment</u>

"Passenger compartment" has been defined broadly by most courts since the <u>Belton</u> decision to include whatever area was within the passenger's reach. <u>See, e.g.</u>, <u>United States v. Pino</u>, 855 F.2d 357, 364 (6th Cir. 1988) (rear section of mid-sized station wagon), <u>cert. denied</u>, 493 U.S. 1090 (1990); <u>United States v. Garcia</u>, 785 F.2d 214, 225 (8th Cir.) (referring generally to the interior of the automobile), <u>cert. denied</u>, 475 U.S. 1143 (1986). The Court of Appeals for this Circuit has held that this definition encompasses the hatchback area as well. <u>Rojo-Alvarez</u>, 944 F.2d at 970; <u>accord</u> <u>United States v. Russell</u>, 670 F.2d 323, 327 (D.C.Cir.), <u>cert. denied</u>, 457 U.S. 1108 (1982). Accordingly, Doward's argument on this point is rejected.

2. <u>Contemporaneous search</u>

The approach urged by Doward, one which requires a determination into the likelihood that a particular arrestee removed from his vehicle could gain access to the passenger

6

compartment and its contents, has been rejected by most courts in favor of a "bright line" test. See Belton, 453 U.S. at 460; United States v. Jackson, 918 F.2d 236, 238, 240 (1st Cir. 1990); United States v. White, 871 F.2d 41, 44 (6th Cir. 1989); United States v. Karlin, 852 F.2d 968, 970-71 (7th Cir. 1988), cert. denied, 489 U.S. 1021 (1989). The constraining principle under this test is not whether the arrestee, handcuffed or not, could reach into the vehicle and seize some item within it, but whether the search was contemporaneous with the arrest. See Belton, 453 U.S. at 460-62 (upholding search contemporaneous with arrest where arrestees were removed from vehicle and separated prior to search); Jackson, 918 F.2d at 240 (upholding search contemporaneous with arrest where arrestees were removed from car, handcuffed, and placed in police cruiser prior to search); United States v. McCrady, 774 F.2d 868, 870-72 (8th Cir. 1985) (upholding search contemporaneous with arrest where arrestee was removed from car and placed in police cruiser prior to search); Karlin, 852 F.2d at 970-72 (upholding search contemporaneous with arrest where arrestee was placed in the rear of a police cruiser prior to search); see also White, 871 F.2d at 44 (holding that "even after the arrestee has been separated from his vehicle and is no longer within reach of the vehicle or its contents, the

Belton rule allowing a police officer to search a vehicle incident to a lawful arrest applies, and such a search is valid").  Here, the search was initiated immediately after Doward was removed from the car and placed under arrest.  The ammunition and gun cleaning kit were discovered before he was taken to the police station, and the weapon and holster were found almost immediately thereafter.  The search was well within the "bright line" rule, and the items were therefore properly seized.

B.  Statements Made To Detective Karolian

In his motion to suppress, Doward alleges that certain in-custody statements were involuntary because Detective Karolian exerted psychological pressure by stating, during the interrogation, that if he did not confess, his daughter would be charged with a crime.  Doward, however, failed to produce any evidence at the hearing to support his claim.  In fact, the only testimony elicited on the subject was from Detective Karolian, who categorically denied threatening or otherwise coercing Doward into giving his statements.  Because I find Detective Karolian's testimony to be worthy of belief and, in any event, there is no evidence that Doward was subjected to psychological pressure, his statements will not be suppressed.

8

## III.  <u>CONCLUSION</u>

For the foregoing reasons, Doward's motions to suppress (document nos. 22-23) are denied.


SO ORDERED.


_____
Paul Barbadoro
United States District Judge

May 5, 1993

cc:  Robert P. Woodward, Esq.
     U.S. Attorney
     U.S. Probation
     U.S. Marshal