**UNITED STATES of America, Plaintiff,**

v.

**Rafael Angel Sanchez COLON A/K/A Luis Alvarado and Miguel Ortiz Rosado A/K/A Miguel Rosado–Ortiz, Defendants.**

**Crim. No. 93–235 (JP).**

United States District Court,
D. Puerto Rico.

Jan. 28, 1994.

Jeannete Mercado, Asst. U.S. Atty., Hato Rey, Puerto Rico, for plaintiff.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it defendants' motions to suppress evidence. Defendant Miguel Ortiz Rosario (Ortiz) filed his motion (docket No. 17) on September 2, 1993. Defendant Rafael Sánchez Colón's (Sánchez) motion (docket No. 18) was filed on September 3, 1993. The motions were referred to United States Magistrate Justo Arenas on September 8 and 10, 1993 (docket Nos. 19 and 20).[1] The Magistrate promptly set them for hearings on October 5 and 8, 1993. The United States filed its opposition to defendant Ortiz's motion on September 20, 1993 (docket No. 23). The Magistrate filed a Recommendation and Order on October 18, 1993 (docket No. 26). On October 28, 1993, the Magistrate ordered that the Report and Recommendation be held in abeyance pending further consideration on his own motion (docket No. 28). The Magistrate filed a revised Report and Recommendation on November 30, 1993. As no opposition to the Magistrate's Report and Recommendation was filed within ten days, the Clerk's office sent the Report and Recommendation to the Court on December 16, 1993. **For the rea-**

---

1. Any delay resulting from defendants' Motion to Suppress, from the date of the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion is excludable from the time computation for purposes of the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(1)(F).

sons set forth below the Court only partially adopts the Magistrate's recommendations and DENIES defendants' motions to suppress.

## I. The Facts

The Magistrate made the following factual findings. At about 5:10 p.m. of July 16, 1993, Herschel, a trained and experienced narcotic detector dog, alerted law enforcement officers at the Luis Muñoz Marín Airport to the presence of odor of illicit drugs within a cardboard box located on a conveyor belt containing domestic and international luggage. The box was destined for Philadelphia, had baggage claim ticket number 75–87–52 attached to it and the name "Luis Alvarado" written on it. The box was taken to Inspector Rivera about ten to fifteen minutes after the alert. Inspector Rivera then learned from a passenger listing that the box had been checked by Luis Alvarado who was travelling with Miguel Rosado.[2] The passengers held consecutive seats on the flight destined to Philadelphia and had paid in cash for their consecutively numbered tickets. Accompanied by custom inspectors Angel Pellica and Carlos Ruiz, Inspector Rivera then proceeded to the jet away area where the passengers were waiting to board the aircraft. The inspectors asked all the passengers waiting to board the aircraft for their tickets and boarding passes. At about 6:15 p.m., Ortiz was stopped. He showed the inspectors two tickets and a baggage claim ticket which matched the one attached to the box in which illicit drug odor had been detected. Three minutes later, Sánchez, who was nearby, was detained. When asked his name he replied that he was Rafael Sánchez. He had in his possession, however, only the boarding pass with the name "Alvarado" on it. Defendants were then told that they were being held for investigation and that Drug Enforcement Administration (DEA) agents would be coming to the airport to interview them. Defendants were led to the United States Custom enclosure and placed in separate rooms where they waited until DEA agents showed up about an hour later. During this waiting period, no statements were elicited from the defendants. The DEA agents who arrived at the airport were Agent Izquierdo and Agent Enrique Nieves. Defendants were read their Miranda rights and were asked whether they understood their rights. The defendants were not asked whether they waived their rights, but rather were asked questions ·regarding the box. Sánchez produced his driver's license which showed that his true name was Rafael A. Colón Sánchez or Sánchez Colón. He explained that he was travelling to Philadelphia because he lived there. Agent Nieves asked Sánchez for consent to search the box. Sánchez replied that he could not give his consent because the only baggage he was carrying was a small carry-on bag. He told the agent that the box belonged to Ortiz. Ortiz, in turn, told Agent Nieves that he was not aware of any box and was carrying only one bag. He had no identification on his person and no other luggage. He also told the agents that he lived in Philadelphia and that he knew Sánchez from Philadelphia. The DEA agents then decided to seek a search warrant for the box. The defendants were informed of the DEA agents' decision, were handcuffed and transported to the DEA headquarters in Isla Verde. The search warrant was obtained later that evening and the search of the box revealed cocaine. The defendants were taken to the federal detention facility at about midnight.

## II. Discussion

### A: Standard of Review

The motions to suppress in this case were referred to Magistrate Arenas pursuant to Section 636(b)(1)(B) of Title 28 of the United States Code, which, when read in conjunction with Section 636(b)(1)(A) of Title 28 of the United States Code, provides that a district court may refer motions to suppress to magistrates, who then may not enter a final determination on the matter but may make proposed findings of fact and recommenda-

---

**2.** The Magistrate did not include the following information in his findings, but the transcript of the Suppression Hearing demonstrates that the following testimony is uncontroverted. The de-

fendants and the box were to fly to Philadelphia, Pennsylvania, on Flight 1134 at 8:30 p.m. Defendants were to board the aircraft from jetway 15. (Suppression Hr'g. Tr. p. 18, lines 16–19).

tions. The parties then have ten days to file objections to the magistrate's report. Section 636(b)(1) provides that,

> [a] judge of the court may accept, reject, or modify, in whole or in part the findings and recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

### B. Defendants' Motions and Magistrate's Recommendation

#### 1. *Ortiz's Motion*

Ortiz's suppression motion includes three different challenges. First, Ortiz challenges the validity of his detention. He argues that the United States Custom inspectors detained him without suspicion that he was guilty of criminal conduct and that his detention was based on an inarticulable hunch. He moves to suppress his airplane tickets and the baggage claim ticket linking him to the box arguing that these were discovered as a result of his detention. Second, Ortiz challenges the validity of admitting into evidence statements made by Sánchez after his arrest. Finally, he challenges the legality of a joint trial with Sánchez and moves for severance. He argues that a joint trial would prove prejudicial if the government sought to prove that the box belonged to him and either party sought to introduce the exculpatory statements concerning the ownership of the box made by defendants after their arrest.

#### 2. *Sánchez's Motion*

Sánchez argues that the airport inspectors lacked reasonable suspicion to detain him or to seize him. He moves for the suppression of all statements made by him on July 16, 1993,[3] and of any "fruits" of the search and seizure conducted by law enforcement agents on the same date. Finally, Sánchez argues that the search of the box was illegal as it was either the fruit of his illegal detention and arrest or was effected through an improperly-obtained warrant. Sánchez's motion is worded very generally and fails to specify any statements or tangible evidence, other than the cocaine found in the box, he wishes suppressed. Sánchez's motion also fails to allege any specific defects in the warrant obtained to search the box.

#### 3. *Magistrate's Recommendations*

The Magistrate makes the following recommendations: the motion to suppress the cocaine found in the box should be denied; the motion to suppress the statements elicited from the defendants should be granted as to those statements given by the defendants after they were led to the customs enclosure area; the motion to suppress the two airline and baggage claim tickets should be denied; the motion to suppress any items taken from the defendant's wallet should be granted.[4]

### C. The Investigatory Stop and the Airline and Baggage Claim Tickets.

Law enforcement officials may sometimes need to take "necessarily swift action predicated on on-the-spot observations of the officer on the beat" which are not subject to the warrant procedure, but rather must be "tested by the Fourth Amendment's general proscription against searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). A police officer may in appropriate circumstances and in an appropriate manner approach a person for the purpose of investigating possibly criminal behavior even though there is no probable cause to perform an arrest. *Id.* at 22, 88 S.Ct. at 1880. These investigatory "approaches" have become known as "Terry Stops." They are legal and fail to violate any constitutionally protected right of the person stopped as long as the law enforcement officers are able "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880. The Magistrate found that there was nothing improper in the inspectors approach and questioning of defendants at the jetway. We agree. "An

---

**3.** Sánchez argues that the law enforcement agents failed to read *Miranda* warnings to him after he was arrested and before he was questioned by Drug Enforcement Agency agents.

**4.** Sánchez does not specifically move for the suppression of anything obtained from his wallet; however, Sánchez moved to have any "fruits" of the search and seizure suppressed.

investigatory stop is permissible on a reasonable suspicion that a 'person has been, is, or is about to be engaged in criminal activity.'" *United States v. Jackson*, 918 F.2d 236, 239 (1st Cir.1990) (citations omitted). In reviewing the reasonableness of a "Terry Stop," two inquiries are proper. First, it must be determined whether the law enforcement agent's initial intrusion was justified. Second, it must be determined whether the action taken was reasonably limited in scope to the circumstances which justified the interference in the first place. *See United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983); *Jackson*, 918 F.2d at 238. We proceed now to apply these principles to the actions undertaken by the law enforcement agents who approached the defendants. After being alerted to the odor of illicit drugs in a box checked into a Philadelphia-bound flight,[5] Inspectors Rivera, Pellica and Ruiz proceeded to the gate where passengers were waiting to board the aircraft. The inspectors could point to articulable facts, which taken together with rational inferences from those facts, warranted the questioning of all the passengers waiting to board the aircraft which was to carry the box to Philadelphia. Inferring that one of the passengers waiting to board the aircraft was the owner of the box was rational, as the inspectors had ascertained that the box had been checked in by Luis Alvarado, a passenger destined to Philadelphia on the same flight as the box. The inspectors had also learned that this passenger had received a baggage claim ticket matching the one placed on the box, that he had a travelling companion and that both their tickets had been purchased with cash at the airport counter. The inspectors had, at this point, reasonable

suspicion to perform an investigatory stop of all passengers waiting to board the Philadelphia-bound aircraft. Seeking to find the owner of the box, the inspectors approached all the passengers waiting to board the flight and asked to see their airline and baggage claim tickets. Ortiz and Sánchez were two of the passengers approached by the inspectors. The inspectors initial intrusion—asking to see Ortiz's and Sánchez's tickets and boarding passes—was justified. In addition, the inspectors' actions were limited in scope to the circumstances which justified the interference in the first place. The inspectors merely asked defendants their names and for their airline and baggage tickets. These questions were asked to enable the inspectors to identify the person who had checked in the box under the name of Luis Alvarado and his travelling companion. Defendants provided the inspectors with the information and documents requested voluntarily.[6] Thus, the inspectors discovered the defendants' airline and baggage claim tickets as a result of a valid investigatory stop. Therefore, defendants' motion to suppress these three items on the grounds that these were discovered as a result of an improper search and seizure as the defendants claim is hereby DENIED.

**D. Defendants' Arrest, the Airline and Baggage Claim Tickets and Statements Made by Sánchez While in Custody.**

▮ Probable cause to arrest individuals suspected of transporting illegal drugs in an airport may be proven with evidence of "a strong alert by a narcotics dog [to the odor of drugs in a specific container], evidence that the dog was reliable and evidence linking the container to the individual arrested." *See United States v. Maldonado–Espinosa*, 767

---

5. Although defendants do not challenge the legality of the dog sniff in this action, we find it worthwhile to note that, following precedent set by the United States Supreme Court and the First Circuit we have held that a dog sniff, like the one performed in this action, does not violate any constitutional interests. *See United States v. Suárez*, 786 F.Supp. 1073 (D.Puerto Rico 1991). See also *United States v. Maldonado–Espinosa*, 767 F.Supp. 1176 (D.Puerto Rico 1991) (holding that random dog sniffing, performed without particularized suspicion, is legal where circumstances allow such sniffing with no interference with the luggage or the luggage owner).

6. The Magistrate did not make an explicit finding regarding the voluntariness of defendants compliance with the inspectors' request. However, this finding is implicit in his recommendation that the two airline and one baggage claim tickets not be suppressed. In addition, the Suppression Hearing's transcript supports the implicit finding. (Suppression Hr'g Tr. pp. 18, lines 24–25, 19, lines 1–2, 21, lines 5–11, and p. 59, lines 14–18).

F.Supp. 1176, 1188; *Race*, 529 F.2d 12, 15 (1st Cir.1976). The Magistrate found that defendants were arrested—seized for Fourth Amendment purposes—at the moment they were told by the inspectors to accompany them to the enclosure area. We agree with the Magistrate on this point. The government does not argue that defendants were not "seized" when they were asked to accompany the inspectors to the enclosure area; rather, the government argues that it had probable cause to arrest defendants. The Magistrate found that the inspectors never acquired probable cause to arrest the defendants, even though he found "there were moments when the agents' degree of suspicion might have increased." After a careful consideration of the facts in this case, we find that we cannot determine whether the government had probable cause to arrest defendants on the current state of the record. The defendants did not challenge the strength or reliability of the dog alert in their suppression motions or at the suppression hearing. In fact, defendants did not address the government's contention that the inspectors acquired probable cause to arrest the defendants, but limited themselves to contending that the inspectors did not have reasonable suspicion to conduct even an investigatory stop. Evidence admitted at the suppression hearing established a link between the box on which illicit drug odor had been detected and the defendants. The inspectors acquired information from airline personnel which allowed them to determine the name of the passenger who checked in the box. Moreover, the inspectors found out that the passenger had a travelling companion, had bought the airline tickets with cash and that he had received a baggage claim ticket matching the one attached to the box. When the inspectors caught up with the defendants at the gate, they were able to identify defendants as the individuals who had checked in the box in which illicit drug odor had been detected. In addition, the inspectors discovered that defendant Sánchez was probably travelling under an assumed name as he responded that his name was "Rafael Sánchez" even though his airline ticket and boarding pass—the only document in his possession—identified him as "Luis Alvarado." This factual scenario certainly could have given the inspectors probable cause to arrest the defendants. If the dog alert was reliable, the arresting inspectors had probable cause at the time to believe that a crime had been committed and that these two defendants probably committed the crime. Both defendants move to suppress statements made by Sánchez on the day of the arrest.[7] As there is no evidence in the record pertaining to the strength of the particular dog alert in this case or to the general reliability of the canine unit performing the sniff, we are unable to hold that the government has proven that the inspectors had probable cause to arrest the defendants. The Court, therefore, cannot make a general ruling that statements made by Sánchez during custody should be suppressed until it holds a hearing to receive further evidence regarding the reliability of the dog alert. The Court can and does make a determination regarding defendants' motion to suppress the airline and baggage claim tickets, as well as Ortiz's motion to suppress statements made by Sánchez. The Court's determinations follow.

### 1. *Airline and Baggage Claim Tickets*

Defendants' airline and baggage claim tickets will not be suppressed as they were discovered pursuant to a valid investigatory stop and were voluntarily shown to the inspectors. Defendants' airline and baggage claim tickets were not discovered pursuant to a search incident to an arrest. Thus, the determination of whether probable cause existed to arrest defendants is immaterial to deciding whether the airline and baggage claim tickets should be suppressed. Therefore, the Court rules that no violation of defendants' constitutional rights occurred which would mandate the suppression of these items.

### 2. *Ortiz's Motion to Suppress Statements Made by Sánchez*

Ortiz argues that Sánchez's statements are inadmissible hearsay and must be suppressed. Ortiz's motion fails to direct the Court to the specific statements he wishes

---

**7.** Neither defendant moves to suppress statements made by Ortiz.

the Court to suppress. Thus, the Court can only assume that Ortiz refers to the statements made by Sánchez regarding the box when interrogated by DEA agents. When asked for his consent to search the box Sánchez replied that he could not give his consent because the box belonged to Ortiz. The Court cannot identify any other statements made by Sánchez that would be prejudicial to either defendant. Thus, the issue before the Court is whether the statement made by Sánchez regarding the ownership of the box ought to be suppressed. The Government argues that Ortiz lacks standing to object as objections of admissibility of statements may be raised only by the person who made the statement. The Government fails to cite any authority to support its argument. It may be that Ortiz lacks standing to object to the admissibility of statements made by Sánchez on the grounds of Sánchez's privilege of self incrimination; however, the same may not be true if the statement made by Sánchez was a confession which tended to incriminate or inculpate Ortiz. This last situation would involve potential *Bruton* concerns.[8] The Court has reviewed the transcript of the Suppression Hearing held by the Magistrate on October 8, 1993, and has failed to find testimony of any statement by Sánchez which could be considered a confession. Thus, the motion to suppress before the Court does not raise any *Bruton*-type concerns; there is no confession by either defendant which inculpates the other. Sánchez's statement that the box belonged to Ortiz is an out-of-court statement which may be inadmissible hearsay if offered to prove the truth of the matter asserted, *see* Fed.R.Evid. 801(c), unless the statement is brought under one of the exceptions to the rule. Perhaps anticipating the government's strategy at trial, Ortiz argues that even though one of the rule's exceptions makes "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" admissible, *see* Fed.R.Evid.

801(d)(2)(E), before admitting Sánchez's statement into evidence the Court must determine whether Ortiz and Sánchez were acting in concert. Without elaborating and failing to cite any authority, Ortiz argues that if the Court finds that the defendants were acting in concert the statement must be suppressed. Ortiz's argument is misplaced. Ortiz has not presented the Court with any grounds which would justify the suppression of any statements made by Sánchez, especially the statement made by Sánchez regarding the ownership of the box. It may be that the statement made by Sánchez regarding the ownership of the box is inadmissible hearsay. We do not decide that now. It will be up to the government, should it seek to introduce the statement made by Ortiz at trial, to invoke an applicable exception and show by a preponderance of the evidence that a conspiracy embracing both the declarant and the defendant existed, and that the declarant uttered the statement during and in furtherance of the conspiracy. *See United States of America v. Sepúlveda*, 15 F.3d 1161 (1st Cir. December 20, 1993) (citations omitted). Ortiz, the party against whom the evidence will be presumedly offered, will then have an opportunity to object to the statement. At this point, however, Ortiz has not made any arguments or presented evidence which would warrant the suppression of any of Sánchez's statements. Therefore, Ortiz's motion to suppress statements made by Sánchez is **DENIED.**

### E. Sánchez's Motion to Suppress the Box and its Contents

█ Sánchez argues that the search of the box was illegal because it was either the fruit of his illegal detention and arrest or was effected through an improperly obtained warrant. Sánchez's motion fails because he lacks standing to challenge the seizure and search of the box.[9] A person who abandons

---

8. In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the admission of a defendant's post-conspiracy confession implicating a codefendant constitutes reversible error if the confessing defendant does not take the stand and allows himself to be cross-examined denying the accused his Sixth Amendment right of confrontation.

9. The Magistrate found that the dog alert had supplied probable cause for a search of the box with a proper warrant. The Magistrate also found that the facts presented in the affidavit supporting the application for the warrant were sufficient to conclude that there was a fair probability that contraband or evidence of a crime would be found in the box in question. The

or disclaims ownership of an item forfeits any claim of privacy in its contents and he may not later challenge the police's warrantless search (or a search based on a defective warrant) of that item. *See United States v. Santos Ferrer*, 999 F.2d 7 (1st Cir.1993) (citations omitted). In this case, Agent Izquierdo testified at the suppression hearing that both defendants had disclaimed ownership of the box and that Sánchez had told agent Izquierdo that the box belonged to Ortiz. There is no testimony contravening the agent's version on this point. The Magistrate credited the agent's account. Thus, neither defendant can challenge the police's search of the box even if it was true, as Sánchez argues, that the search of the box was illegal.

### III. Conclusion

The Court adopts the Magistrate's findings of fact, but rejects his recommendations and instead rules as follows:

A. Defendants' motion to suppress the airline and baggage claim tickets is hereby **DENIED.**

B. Sánchez's motion to suppress the box in which the odor of illicit drugs was detected and its contents is **DENIED.**

C. Ortiz's motion to suppress statements made by Sánchez while in custody is **DENIED.**

D. Ortiz's motion for severance is **DENIED.**

E. The Court hereby **SETS a hearing for February 14, 1994, at 9:00 a.m.,** to receive further evidence regarding the strength of the particular dog alert in question and the general reliability of the canine unit performing the sniff in this case. This evidence is necessary to determine whether the inspectors had probable cause to arrest defendants. The probable cause determination, in turn, is necessary to ascertain whether Sán-

chez's motion to suppress statements made while he was in custody should be granted.

IT IS SO ORDERED.

---

Magistrate, however, did not make an independent finding that the canine unit performing the sniff in this case was reliable. *See United States v. Race*, 529 F.2d 12, 15 (1st Cir.1976). Given this failure, we cannot adopt the Magistrate's findings regarding the existence of probable cause to support the issuance of a warrant without first admitting further evidence of the canine

unit's reliability. The Court need not, however, make a finding regarding the canine unit's reliability to make a determination on whether to grant or deny Sánchez's motion to suppress the box. The Court denies Sánchez's motion to suppress the box and its contents because it finds that Sánchez lacks standing to challenge its admissibility.