**UNITED STATES of America, Appellee,**

v.

**Bruce RAINERI, Defendant, Appellant.**

No. 93-2132.

United States Court of Appeals,
First Circuit.

Heard May 2, 1994.

Decided Dec. 9, 1994.

---

Dorothy F. Silver, by Appointment of the Court, Manchester, NH, for appellant.

Jean B. Weld, Asst. U.S. Atty., with whom Paul M. Gagnon, U.S. Atty., Concord, NH, was on brief, for U.S.

Before SELYA and BOUDIN, Circuit Judges, and CARTER,* District Judge.

BOUDIN, Circuit Judge.

On April 6, 1992, Bruce Raineri ("Raineri") was indicted together with five other defendants: Gary Neal, William Kenney, Charles Flynn, Richard Ferguson and Brian Raineri. The lengthy indictment charged various of the defendants with a series of offenses arising out of the planning and execution of a string of armed robberies in New Hampshire during 1991. The three charges against Raineri all related to his alleged participation in a single armed robbery of the home of a grocery chain owner named Fitzpatrick during the summer of 1991, apparently in the hope of obtaining the store proceeds.

* Of the District of Maine, sitting by designation.

In the indictment, count 14 charged Raineri with conspiracy to obstruct interstate commerce by robbery involving actual or threatened force and violence. 18 U.S.C. § 1951. Count 24 charged Raineri with using or carrying firearms during and in relation to the conspiracy. 18 U.S.C. § 924(c)(1). Count 28 charged Raineri with possessing firearms (specifically, a rifle and shotgun) after having previously been convicted for a crime punishable by more than one year's imprisonment. 18 U.S.C. §§ 922(g), 924(e)(1).

On June 17, 1992, Raineri pled guilty to all three charges based on a plea agreement with the government. The inducement offered in the plea agreement was the government's commitment to move for a departure under U.S.S.G. § 5K1.1 if (in the government's judgment) Raineri provided substantial assistance. In the plea hearing pursuant to Fed.R.Crim.P. 11, Raineri told the court that his plea was voluntary and was based on no inducement other than the plea agreement. The prosecutor provided a proffer of evidence for each of the counts and Raineri stated on the record, without qualification, that the description was correct.

As to penalties, the court asked Raineri if he was aware of the maximum penalties provided for the three offenses, and Raineri replied: "Ten years, 20 years, and five years." The court then said:

Count fourteen is 20 years and a fine of $10,000 or both. Count Twenty-four is five years imprisonment, which must be consecutive to the crime of violence. Count Twenty-eight is ten years and a fine of $10,000 or both. Do you understand that?

Raineri replied: "Yes, I do." There was no reference to supervised release or restitution. Neither defense counsel nor the prosecutor expressed any disagreement with the district court's description of penalties.

On October 2, 1992, Raineri's counsel filed motions to withdraw his guilty plea, to continue his trial (trial for several other defendants who had not pleaded guilty was scheduled for October 5), and to permit counsel to withdraw. As reasons for the requested

withdrawal of the guilty plea, Raineri's motion said in conclusory terms that he was not guilty, that he had not understood the charges against him or his exposure under the Sentencing Guidelines, and that he was suffering at the time of his plea from lack of medicine to counteract his drug dependency.

On October 5, 1992, the district court denied Raineri's motion to withdraw his guilty plea but appointed for him new counsel, who also now represents Raineri on this appeal. The district court then proceeded to try three co-defendants, the other two having pleaded guilty. The co-defendants who were tried—Neal, Kenney and Flynn—were subsequently convicted on a number of charges, and this court largely affirmed. *United States v. Neal,* 36 F.3d 1190 (1994). The convictions included charges relating to the August 3, 1991, armed robbery of the Fitzpatrick home in which Raineri had been implicated.

In March 1993, Raineri's new counsel filed new motions seeking withdrawal of the guilty plea. The reasons now offered were that Raineri had not been mentally competent to plead guilty because he was then suffering from lack of methadone; that the government had failed to disclose at sentencing its additional (alleged) promise that Raineri would be given immediate access to methadone if he pleaded guilty; and that he had not been adequately represented by prior counsel. Faced with these claims, the court scheduled an evidentiary hearing for April 15, 1993.

At the April 15 hearing, Raineri testified; he described his alleged defenses (*e.g.,* that he had not been at the scene of the break-in and had never possessed the rifle and shotgun attributed to him) and said that the intended crime was burglary of an unoccupied home rather than armed robbery of individuals. He also said that he pleaded guilty to get methadone and that he had not known that the five-year sentence under count 24 was mandatory. Finally, Raineri explained that he had delayed from June to October 1992 in seeking to withdraw his plea because of difficulties in reaching his then-counsel. Raineri's former counsel testified at length about his representation, admitting

that he had not returned some phone calls from Raineri during the summer of 1992.

On April 20, 1993, Raineri's counsel filed an amended memorandum of law urging another basis for withdrawing the guilty plea. Counsel explained that Raineri's presentence report had been received in March 1993, and it disclosed for the first time that Raineri had three previous convictions for violent felonies or serious drug offenses. Raineri had been advised at the plea hearing that the penalty under count 28 was a maximum of 10 years' imprisonment, $10,000 fine or both; but his triple felony record meant that he was subject to a minimum of 15 years' imprisonment and the maximum fine was $25,000. 18 U.S.C. §§ 922(g), 924(e)(1). The government responded that in order to "remedy any possible defects," it was moving to dismiss count 28 of the indictment under Fed.R.Crim.P. 48(a).

On April 25, 1993, the district court entered an order granting the motion to dismiss count 28 pursuant to Rule 48(a). The court rejected as untrue Raineri's claim that the government had induced his plea by promising to place him immediately in a methadone treatment program. It found that his original counsel had not provided ineffective assistance. Finally, the court found a lack of good cause to permit a withdrawal of the guilty pleas pursuant to Fed.R.Crim.P. 32(d):

> Here, the timing (3⅔ months after entry of plea); (lack of) force and plausibility of reasons; (unpersuasive) assertion of innocence; the finding of no breach of the plea agreement; and the finding that the defendant's plea on June 17, 1992, can still be regarded as voluntary, intelligent, and otherwise in conformity with Rule 11, Fed. R.Crim.P.; requires the further finding that "no fair and just reason" exists such as to permit the withdrawal of the defendant's pleas. *United States v. Tilley,* 964 F.2d 66, 72 (1st Cir.1992).

On September 27, 1993, the court held a sentencing hearing. At Raineri's behest, his brother Brian testified. He implicated Bruce in the conspiracy to rob Fitzgerald's home, but said Bruce had not been present at the house. He also said that no one had expect-

ed the house to be occupied or a gun to be used, although in fact the house was occupied and co-conspirator Kenney turned out to be carrying a handgun. Finally, Brian testified that the cooperation that he provided in testifying at the October 1992 trial of the co-defendants was also supposed to inure to the benefit of Bruce. The government presented testimony that any departure in favor of Bruce Raineri was to be based on his own cooperation, not that of his brother, and that Bruce Raineri's attempted withdrawal of his guilty plea made him useless to the government as a trial witness against the non-pleading defendants. Other government evidence, largely hearsay but still properly considered at sentencing, indicated that Bruce Raineri had transported his brother and the stolen property after the break-in was completed, and that he and his brother moved a rifle and shotgun from the van to another car.

Raineri himself testified at the sentencing hearing. He admitted helping to plan the break-in and accompanying his brother to a rendezvous point. He denied that a rifle or shotgun had been carried or that he had known about any weapon. He said that at the time of his guilty plea he had been "in a severe state of withdrawal from methadone" and had expected the methadone treatment to recommence "upon the guilty plea." He also said that he knew that the sentence for carrying a firearm under count 24 would be consecutive, but not that it was mandatory.

At the end of the sentencing hearing, the court found, based on the testimony at the co-defendants' trial, that guns had been carried in the van by the Raineri brothers. The court also found that Raineri had obstructed justice by lying to the court and was not entitled to a reduction for acceptance of responsibility. Raineri was then sentenced to 60 months' imprisonment on count 14, 60 months' imprisonment on count 24 to be served consecutively, and five years' supervised release, and he was ordered to make restitution in the amount of $5,988. This appeal followed.

I.

■ Raineri's first and most powerful claim on appeal is that his original guilty plea was not "knowing or voluntary and otherwise in conformity with Rule 11(c)(1) because he was not properly informed of the consequences of his plea." Rule 11 prescribes numerous steps that must be followed before a defendant is allowed to plead guilty. As to penalties—the issue with which we are immediately concerned—the rule says that before accepting the guilty plea, the court must address the defendant personally in open court and inform the defendant of, and determine if the defendant understands,

> the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law including the effect of any special parole or supervised release term, ... and when applicable, that the court may also order the defendant to make restitution to any victim of the offense.

Fed.R.Crim.P. 11(c)(1).

One might expect that whatever the complexity of the Sentencing Guidelines, it would be easy accurately to advise the defendant of the statutory penalties. But as this case shows, the statutory penalties themselves are sometimes complicated; the defendant may be charged with multiple counts; and the penalties may depend on information (such as prior convictions) that is not automatically available to the district judge at the time of the plea. Accordingly, district judges often rely heavily, although not exclusively, on the prosecutor to provide the court with a description of statutory penalties or at least to advise the court if it misstates the terms.

Here, the prosecutor did provide a statement of statutory penalties in the plea agreement, the district court followed this script, and the result was a set of mistakes. Most important, Raineri was incorrectly told that the penalty for count 28, the possession of firearms charge, was a maximum of 10 years' imprisonment and a $10,000 fine. Because Raineri apparently had three prior felonies involving violence or serious drug offenses, he was subject to a mandatory minimum of 15 years' imprisonment and the maximum fine was increased to $25,000. It appears that the district court, the prosecutor and

Raineri's then defense counsel were all unaware that Raineri was subject to this enhanced penalty.

Whether Raineri was adequately counselled on the penalty for count 24 is debatable. The district court told him that the penalty was "five years imprisonment, which must be consecutive to the crime of violence", so there is no doubt that Raineri knew that he was subject to a consecutive five-year sentence. Raineri denies that he understood that this five-year term was mandatory, while the government points to the term "must" as implying that the term is mandatory. The district court made no findings on the point, apparently because Raineri's counsel did not separately urge this alleged misunderstanding as a basis for setting aside the plea.

Finally, the court did not expressly advise Raineri that supervised release might be imposed or of his liability to pay restitution. Both warnings are required by the language of Rule 11(c)(1) quoted above. The result is three separate admitted omissions or mistakes in the advice required to be given by the rules (the misstatement of the fine and imprisonment levels under count 28; the failure to mention supervised release terms; and the failure to mention restitution). A possible fourth mistake may exist (failure to explain the mandatory character of the five-year sentence under count 24), depending on how the court's warning is read.

■ The legal effect of a Rule 11 violation is more difficult to state concisely. Ordinarily, a defendant who pleads guilty has no automatic right to withdraw a plea even before sentencing. *See, e.g., United States v. Buckley,* 847 F.2d 991, 998 (1st Cir.1988), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989). Rule 32(d) provides that "the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason," and we have said that decisions by the district court under this standard are reviewed only for abuse of discretion. *See United States v. Doyle,* 981 F.2d 591, 594 (1st Cir.1992). Recently, in *United States v. Parrilla–Tirado,* 22 F.3d 368, 371 (1st Cir.1994), this court said that the exercise of discretion under Rule 32(d)

depends on "the overall situation, most prominently"

(1) the plausibility of the reasons prompting the requested change of plea; (2) the timing of the defendant's motion; (3) the existence or nonexistence of an assertion of innocence; and (4) whether, when viewed in light of emergent circumstances, the defendant's plea appropriately may be characterized as involuntary, in derogation of the requirements imposed by Fed. R.Crim.P. 11, or otherwise legally suspect.

*Id.* 22 F.3d at 371 (omitting footnote and citations).

Yet "discretion" may be somewhat more limited where there is an outright violation of Rule 11 rather than merely second thoughts by a defendant prompting him to reconsider his plea. Originally, a line of decisions emanating from *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), suggested that the district court had to allow the withdrawal of a guilty plea where the earlier plea hearing did not conform to Rule 11. In response, Rule 11 was itself amended in 1983 to add Rule 11(h), which is entitled "Harmless Error" and provides: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."

■ In this case, Raineri was told, or at least ought to have understood from what he was told, that he faced potential imprisonment of 35 years and a maximum fine of $20,000. His actual exposure was worse than what he was told (a minimum of 20 years and a maximum of 45), but what he received was less—indeed far less—than the maximum of which he had been inaccurately warned. He received only ten years' imprisonment, five years' supervised release and no fine but about $5,000 in restitution. The question is what should be done where the defendant is not advised of the full penalties to which he may be subject but actually gets the benefit of the lesser penalty.

Harmless error analysis usually poses the question whether the error influenced the decisionmaker or whether the ultimate outcome would have been the same if the error had not been committed, but this is not nec-

essarily the proper perspective in a case such as our own. It is true that Raineri might not have pled guilty if he had been correctly told that a far larger penalty threatened him. But one might ask why the defendant is entitled to complain if the actual punishment is no worse than what he was told, and what he was told was even less than the law allows. Arguably, such a defendant ought to be pleased with the error—unless, for extraneous reasons, he has in the meantime changed his mind about making the plea.

Rule 11(h) did not adopt a "but for" test of harmless error; it speaks of error affecting the "substantial rights" of the defendant, a general phrase that allows a measure of interpretation. The Advisory Committee notes to Rule 11(h) provide, as an illustration of harmless error, an instance in which "the judge understated the maximum penalty somewhat, but the penalty actually imposed did not exceed that indicated in the warnings." There is some case law that supports the view that a defendant should not be heard to complain if he ultimately gets the benefit of the lesser sentence that was inaccurately described to him at the time of the plea, *see, e.g., United States v. Bashara,* 27 F.3d 1174, 1179–80 (6th Cir.1994); *United States v. Bachynsky,* 934 F.2d 1349, 1359–60 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991), but the law is admittedly not uniform in all circuits or perfectly settled. *See United States v. Whyte,* 3 F.3d 129, 130 (5th Cir.1993).

We think that a defendant who gets the benefit of such an inaccurately described lesser sentence is normally not prejudiced, but that there can be no absolute rule because such misadvice may not always be harmless. For example, imagine a defendant who is wrongly told at the Rule 11 hearing that the maximum penalty for his crime is five years when in fact the maximum penalty is 15 years. The defendant might fairly expect, given his own past history and limited role in the offense, that the maximum sentence (whatever it might be) would not be likely to be imposed. If he then pled guilty and thereafter received a five-year sentence, he might reasonably think that the misinformation had prejudiced him in a rather concrete way. *Cf. United States v. Whyte,* 3 F.3d at 130.

■ In our case, there is no indication that the misinformation given to Raineri at the Rule 11 hearing led him to expect a lesser penalty than he actually received. Raineri had an extensive criminal record and therefore little basis to expect lenient treatment, *apart* from any departure motion the government might make if he provided substantial assistance. Absent a departure motion, we see no reason why Raineri should have expected that his sentence would be substantially less than 15 years (here, 10 in prison and 5 on supervised release), a figure that is less than half of the maximum amount of which he had been warned.

■ The same reasoning applies to the district judge's failure to inform Raineri of the possibility of supervised release and of restitution, rather than a fine. Courts have commonly held that such errors are harmless when the defendant receives a combined sentence of imprisonment and supervised release that is less than the maximum term of imprisonment earlier described. *See, e.g., United States v. Gracia,* 983 F.2d 625, 628 (5th Cir.1993). The same rule is followed where the defendant is required to pay restitution in an amount less than the potential fine of which he was warned. *See, e.g., United States v. Padin Torres,* 988 F.2d 280, 283–84 (1st Cir.1993).

## II.

■ Raineri's second claim of error is that the district court "abused its discretion and acted beyond its authority under Rule 48(a)" in granting the government's motion to dismiss count 28 after Raineri had pled guilty. Ordinarily a defendant is not entitled to appeal a dismissal under Rule 48(a). However, Raineri argues that the wrongful dismissal undercut the plea agreement and that he was entitled on that ground to withdraw his guilty plea. The district court's refusal to allow him to withdraw his plea is, of course, reviewable at this time together with any legal issues bearing on that refusal.

If count 28 had been dismissed with prejudice, we would summarily reject Raineri's

argument as a rather mechanical claim that he did not get what he bargained for. It is quite true that Raineri's bargain included a plea of guilty to count 28, but a dismissal of that count with prejudice would be an even better outcome for Raineri as far as count 28 is concerned. To the extent that the dismissal helped to preserve his guilty plea on other counts, the dismissal of count 28 might disadvantage him, but it is hard to see why the dismissal would thereby be wrongful or the disadvantage one with which a court should be concerned.

The difficulty in this case is that the government did not ask for a dismissal with prejudice nor did the district court say that the dismissal was with prejudice. Customarily Rule 48(a) dismissals are without prejudice and permit the government to reindict within the statute of limitations. *See, e.g., United States v. Matta,* 937 F.2d 567, 568 (11th Cir.1991). Surprisingly, Raineri's counsel does not urge this defect, possibly for fear of conceding that Raineri could be reprosecuted on count 28. But we think that the issue is so patent, and the threat of unfairness to Raineri is so severe, that the matter would raise a "plain error" issue, even if it were not intimately related to the Rule 48(a) issue raised by Raineri.

A defendant who pleads to a set of charges may or may not believe that the guilty plea will produce a lesser penalty; but one thing the defendant who agrees to plead on all counts does expect is that there will be no future trial on any of these counts. A defendant willing to plead guilty to all counts might well be unwilling to plead guilty to some of them while leaving others available to the government for future prosecution. We have no reason to think that if the government had offered to accept a plea from Raineri on counts 14 and 24 and said that it reserved the right to prosecute on count 28 at a later date, that he would have pleaded guilty to any of the counts.

"[A] court of appellate jurisdiction may ... direct the entry of such appropriate judgment ... as may be just under the circumstances." 28 U.S.C. § 2106. It is possible that this court could itself order that the dismissal be modified to reflect that it is a dismissal with prejudice. *See, e.g., United States v. Rossoff,* 806 F.Supp. 200, 202–03 (C.D.Ill.1992) (holding that a court may dismiss under Rule 48(a) with prejudice if retrial would be fundamentally unfair). The government would have little equity in opposing such a directive. Alternatively, we might rule now, as part of our holding, that any future prosecution of Raineri on count 28 would constitute harassment and would be barred—a determination that would be likely to give Raineri substantial protection. *See United States v. Salinas,* 693 F.2d 348 (5th Cir.1982).

■ Nevertheless, the choice to forego permanently a prosecution is ordinarily made by the executive branch. *See, e.g., Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985). Thus, while a dismissal of count 28 with prejudice is a quid pro quo for retaining the guilty pleas on counts 14 and 24, we think that there is no reason to compel the government to accept a dismissal with prejudice if it wants instead to surrender the guilty pleas and give the defendant the trial he is demanding. Accordingly, on this single issue we propose to remand to require the government to make an appropriate election.

## III.

Raineri's remaining assertions of error require less discussion. One of them concerns the district court's decision to reject Raineri's claim that his original counsel provided ineffective assistance. Prior to the Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we reviewed a district judge's determination as to competence only for clear error. *See United States v. DiCarlo,* 575 F.2d 952, 954–55 (1st Cir.), *cert. denied,* 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978). Since *Strickland,* the standard of review may be more rigorous where the issue is not a matter of historical fact but of deciding how much competence is enough. *See United States v. McGill,* 11 F.3d 223, 226 n. 2 (1st Cir.1993). Raineri's claim fails under any standard we might apply.

■ In this instance, Raineri's new counsel offers two separate claims of incompetence. The first is that Raineri's counsel failed to advise Raineri properly as to the penalties to which he was subject, and Raineri points specifically to the failure to identify the 15 year minimum applicable to count 28. *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). Here, even if Raineri could show incompetence on this point, he could not show prejudice, which is also required. The failure of counsel to advise Raineri accurately of the penalty on count 28 was not prejudicial to Raineri because count 28 was dismissed and that dismissal will be with prejudice if the guilty pleas are allowed to stand.

Raineri's brief offers, as the second instance of alleged incompetence, the asserted failure of original defense counsel "to conduct a reasonable investigation into a potential line of defense...." No such "line of defense" is identified, although Raineri's new counsel may have in mind the possibility that the rifle and shotgun were not present in the van and that Kenney's possession of a handgun was unknown to and unforeseeable by Raineri. Raineri's brief simply asserts, as the sole evidence of inadequate representation, that the time sheets of Raineri's original defense counsel show "that the attorney spent only 1.8 hours ... reviewing applicable law" and this research took place prior to counsel's first meeting with the defendant.

■ Counsel's time records might provide a basis for further inquiry but the records do not, standing alone, prove either that counsel was incompetent or that the incompetence prejudiced defendant. Perhaps Raineri told his lawyer when they first met that he was guilty as charged on all counts and provided sufficient detail so that counsel saw no point in further investigation of the merits and turned his attention to securing a plea agreement providing for a substantial downward departure if Raineri provided full assistance. On this record we know only that Raineri's counsel originally negotiated what appeared to be favorable plea bargain, and Raineri squandered the opportunity by refusing at the last moment to provide full cooperation.

■ This brings us to Raineri's fourth and final claim of error. Raineri now argues that the government was obliged to move for a downward departure because Raineri did in fact provide substantial assistance to the government. The government's plea agreement expressly said here (as it commonly does) that the substantial-assistance decision was one to be made solely by the prosecutor. But in certain limited situations, the government's failure to move for a downward departure may be the subject of judicial review. *Wade v. United States,* ── U.S. ──, ──, 112 S.Ct. 1840, 1844, 118 L.Ed.2d 524 (1992); *United States v. Canada,* 960 F.2d 263, 269 (1st Cir.1992).

■ We will assume *arguendo* that, as he now claims, Raineri gave the government a considerable amount of information that may have been useful to it. Possibly, under a dictionary definition of the term, the assistance could be called "substantial." But Raineri was not automatically entitled to a dictionary definition where, in the very same document, the government reserved to itself the authority to decide what assistance was substantial. The government may decide to make such a motion (and the district court to grant it if made) based on quite limited help or results, *United States v. Torres,* 33 F.3d 130, 133 (1st Cir.1994); but since by statute the motion is discretionary with the government, see 18 U.S.C. § 3553(e), the government may choose to insist on quite a lot of assistance if it wants to do so.

■ Whatever the limitations on the government's authority to refuse to make a departure motion, it is obvious to us that the government was entitled to expect Raineri to be available to testify at his co-defendants' trial if the government wanted to use him. It is equally clear that his last-minute attempt to deny his guilt after earlier admitting it undermined his value as a witness. This was not the kind of "substantial" assistance that the government was entitled to demand. *Sullivan v. United States,* 11 F.3d 573, 575 (6th Cir.1993) (holding that, absent bad faith or unconstitutional motive, a prosecutor may decline to seek a substantial-assistance reduction for any rational reason).

Finally, we have considered whether guilty pleas should be set aside—even though none of the individual arguments made by Raineri is persuasive—under some type of per se rule or because of a threatened miscarriage of justice. On the former point, we think that there may well be Rule 11 hearings so fundamentally defective that harm must be assumed or deemed irrelevant. *Cf. United States v. Medina Silverio,* 30 F.3d 1, 2–4 (1st Cir.1994) (almost complete absence of Rule 11 colloquy). But just as there are many fair trials but few perfect ones, so flaws are also to be expected in Rule 11 proceedings as they, and the penalties to be described, grow ever more complicated. Where the basic structure of the Rule 11 proceeding is observed, and the individual errors are shown to be harmless, we think that Rule 11(h)'s explicit forgiveness of harmless error should normally be respected.

The outcome would be quite otherwise if we were persuaded that a miscarriage of justice had resulted. Despite the emphasis placed by Rule 11 on advising a defendant of foregone trial rights and prospective penalties, most laypersons would probably think that a court taking a plea ought to be concerned beyond all else with the voluntariness of the plea and the existence of a reasonable basis for thinking that the defendant was actually guilty. We would view with special concern any defect in the proceedings that led us to believe that a plea was coerced or that there was no factual basis for the plea.

Here, voluntariness in the ordinary sense is not in doubt. Raineri claimed that the plea was induced by methadone withdrawal and a false promise of immediate relief by methadone treatment following the plea. But the district court did not accept the claim, and its findings are controlling in the absence of clear error. *Tilley,* 964 F.2d at 70–71. Indeed, there is substantial reason to believe that the claim is false—for example, Raineri did not complain of the lack of methadone when interviewed by the probation officer after the guilty plea—but in any case Raineri does not now question the district court's resolution of the issue.

It is also clear that there was a factual basis for Raineri's guilty pleas. He himself admitted guilt on each count and agreed with the government's description of the evidence against him, which included the presence of a rifle in the van. Even in his retraction, he confessed to conspiracy to engage in burglary but denied the presence of guns in the van. At the co-defendants' trial an informant testified that the Raineris had possessed guns in the van and transferred them from one vehicle to another. Raineri's claim of innocence is an element in the Rule 34 equation but it does not come close to a showing that a miscarriage of justice has occurred.

The case is remanded to permit the government to elect whether to consent to a modified order dismissing count 28 with prejudice. If the government consents, then the guilty pleas and sentences on counts 14 and 24 will remain undisturbed. If the government does not consent, then the district court is directed to vacate the judgment of conviction and the sentences on counts 14 and 24 and to allow the guilty pleas to be withdrawn. The government would then remain free to reindict on count 28 or to request the district court to vacate its order dismissing count 28.

*It is so ordered.*