UNITED STATES, Appellee,

v.

Salvador RIBAS–DOMINICCI, Defendant, Appellant.

No. 94–1880.

United States Court of Appeals, First Circuit.

Heard Feb. 8, 1995.

Decided March 24, 1995.

Pamela A. Wilk, with whom Peter Goldberger, Alan Ellis, and Law Offices of Alan Ellis, P.C., were on brief for appellant.

Miguel A. Pereira, Asst. U.S. Atty., with whom Guillermo Gil, U.S. Atty., and Jose A. Quiles–Espinosa, Senior Litigation Counsel, were on brief for appellee.

Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOWNES, Senior Circuit Judge.

Defendant-appellant Salvador Ribas–Dominicci appeals the denial of his motion to withdraw his plea of guilty. Ribas, a lawyer, engineer, and self-styled military procurement expert, was indicted in the District Court of Puerto Rico on five counts of stealing, converting, and selling property of the United States in violation of 18 U.S.C. § 641.[1] We first summarize the essential facts.

## I.

In 1987 the United States Department of Defense awarded a contract to Quality Manufacturing, Inc., a corporation owned and controlled by Ribas, for the manufacture of 1,692,120 pairs of military trousers. The contract price was $24,197,316. Under the contract terms, the government made fourteen progress payments between October, 1987 and October, 1990 totalling approximately $9,600,000. The indictment alleges that the United States received from Ribas' corporation—"Quality"—goods and services amounting to approximately $9,200,000. (Introductory allegation 8.) The indictment alleges that "title or ownership" of the items manufactured under the contract passed to

the United States not later than final inspection and approval by government inspectors. (Introductory allegation 9.) The district court, in its opinion rejecting the plea-withdrawal motion, found that "[t]itle to the trousers passed to the United States on August 28 and September 4, 1991." The government claimed to have evidence that would prove that Ribas had been specifically instructed not to dispose of any of the trousers.

Count One of the indictment charges that Ribas did willfully and knowingly steal, convert, and sell to a third party 16,135 pairs of trousers worth approximately $227,000.00, which were the goods and property of the United States. Count Two alleges the same as to 4,200 pairs of trousers worth approximately $59,000. Count Three charges the same as to 10,019 pairs of trousers worth approximately $141,000. Count Four alleges the same crime as to 600 pairs of trousers with a value of approximately $8,000. Count Five, the final count, charged the theft and sale to a third party of 336 pairs of trousers worth approximately $4,500.

On the morning that trial was scheduled to commence Ribas signed a plea agreement and pled guilty to Counts Four and Five of the indictment. The government dismissed the first three counts. Ribas was represented by counsel throughout the plea bargaining process, and the Rule 11 proceedings. Two weeks after the plea and before sentencing, Ribas' original counsel moved to withdraw his appearance on the ground that Ribas had retained new counsel. At about the same time, the new counsel informed the prosecutor that a motion to withdraw the guilty plea would be filed. This was done less than a month after the plea. A two-day hearing was held on the withdrawal motion, which was denied by the district court in a thirty-five page memorandum order. For the reasons that follow, we reverse the district court and remand for trial.

---

1. 18 U.S.C. § 641 sets forth criminal sanctions for:

   Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; ...

## II.

Because defendant's motion for withdrawal of plea was made before sentencing, Fed. R.Crim.P. 32(d) is implicated. It provides:

If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

■ This circuit has built a formidable body of precedent covering the withdrawal of a guilty plea. We start with a rule that is so obvious, it may be overlooked: a defendant has no absolute right to withdraw a guilty plea. *United States v. Tilley*, 964 F.2d 66, 72 (1st Cir.1992).

In a very recent case, *United States v. Jose Ramon Cotal–Crespo*, 47 F.3d 1 (1st Cir.1995), we reiterated the principles that govern the issue of whether a guilty plea may be withdrawn. We stated the factors that should be considered in determining whether there is "a fair and just reason" for withdrawing the plea. The most significant is, "whether the plea was knowing, voluntary and intelligent within the meaning of Rule 11." *Id.*, at 3.

Other factors to be considered are "the force and plausibility of the proffered reason; the timing of the request; whether the defendant has asserted his legal innocence; and whether the parties had reached a plea agreement." *Id.*

In discussing Rule 11 we said:

By entering a guilty plea, a defendant effectively waives several constitutional rights. For that waiver to be valid, due process requires that the plea amount to a voluntary and "intentional relinquishment or abandonment of a known right or privilege." *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166 [1171], 22 L.Ed.2d 418 (1969) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019 [1023], 82 L.Ed. 1461 (1938)).

*Id.* We pointed out that technical violations of Rule 11 do not count, but that a violation of one of the Rule's core concerns mandates that the plea be set aside. And we specified three core concerns: "1) absence of coercion; 2) understanding of the charges; and 3) knowledge of the consequences of the guilty plea." *Id.*, at 4. We reiterated that under the law of this circuit, in determining whether there has been a core violation, "we review the totality of the circumstances surrounding the Rule 11 hearing." *Id.* "What is critical is the substance of what was communicated by the trial court, and what should reasonably have been understood by the defendant, rather than the form of the communication." *Id.* We ended our restatement of basic principles by noting that our standard of review is abuse of discretion, and that the trial court's findings of fact are reviewed only for clear error. *Id.*, at 5.

On the question whether there is an abuse of discretion in a Rule 11 setting we have observed:

Yet "discretion" may be somewhat more limited where there is an outright violation of Rule 11 rather than merely second thoughts by a defendant prompting him to reconsider his plea.

*United States v. Raineri*, 42 F.3d 36, 41 (1st Cir.1994). We also noted:

Finally, we have considered whether guilty pleas should be set aside . . . under some type of per se rule or because of a threatened miscarriage of justice. On the former point, we think that there may well be Rule 11 hearings so fundamentally defective that harm must be assumed or deemed irrelevant.

*Id.* at 45.

## III.

■ Our review of the Rule 11 plea proceedings discloses two serious errors. First, was the following statement by the court:

THE COURT: For this to be an offense the Government has to prove that this conduct described in the indictment was done willfully and knowingly, was entered into willfully and knowingly by you. That means that the Government has to prove that at some point in time you had some reasonable understanding that what you were about to do and actually did was

wrong, was marginal conduct, was questionable, was of the kind of thing that if somebody would find out you could be in the predicament that you are now in. In other words, that you had a—had or should have had a pretty good understanding that this was wrong and against the law and you decided to do it that way. That is an element. Do you understand that?

THE DEFENDANT: Yes, sir.

The opening sentence of the statement by the court was not incorrect. It told the defendant that the government had to prove that the "conduct described in the indictment was done willfully and knowingly, was entered into willfully and knowingly by you." The meaning of willfully and knowingly was, however, misstated by the court in the balance of its explanation. Willfully and knowingly in the criminal context does not mean that all the government had to prove was that defendant had "some reasonable understanding" that what he did "was marginal conduct, was questionable." Nor was the government's burden of proof limited to showing that defendant "had or should have had a pretty good understanding that this was wrong and against the law." The government had to prove in the context of this case that defendant knew that the trousers belonged to the government when he sold them to others. *See United States v. McRee,* 7 F.3d 976, 980 (11th Cir.1993); *United States v. Lanier,* 920 F.2d 887, 895 (11th Cir.1991). Significantly, there was no mention of intent or *mens rea* in the first statement by the court.

At the end of the plea hearing this colloquy took place:

THE COURT: May I ask you something, Mr. Ribas, just tell me in your own words what was the mental process, if you will, that led you to do these two sales to this Tiendas Militares?

THE DEFENDANT: Well, your Honor, at the time the company was having very serious financial difficulties and we were attempting to raise cash to continue the operations and continue getting to be a viable organization. *And although it has happened that it is a crime, at that instant*

*I was not consciously stealing and selling, but, obviously, I made a mistake that is typified as a crime.* (Emphasis added.)

THE COURT: *But you do accept now, that when you look into retrospect into the whole situation, obviously, you did something wrong and against the law, without a doubt?* (Emphasis added.)

THE DEFENDANT: Yes, sir.

THE COURT: I understand. You have no doubt about that part now?

THE DEFENDANT: Excuse me, sir?

THE COURT: You have no doubt about that part now?

THE DEFENDANT: No, sir.

THE COURT: Perhaps you were—you acted too fast and you looked the other way, that's what happened in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Okay, I understand. Very well. The Court is going to accept the plea of guilty entered by the defendant as to Counts Four and Five. Judgment of guilty will be entered. Presentence Report will be ordered. And I will give you a sentencing date.

In *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), it was decided unanimously that criminal intent was an essential element of an offense under 18 U.S.C. § 641, the same statute that Ribas was accused of violating. Part of Justice Jackson's opinion was an historical exegesis of the role of intent in criminal law. His words read as eloquently now as they did forty-odd years ago. One small sample will suffice:

The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.

*Id.* at 250, 72 S.Ct. at 243 (footnote omitted). Morissette was convicted under the statute for collecting bomb casings from a U.S. military range and selling them as scrap metal. He argued that he did not have the requisite

intent because he thought that the casings were abandoned. The district court had held that the statute did not require a showing of intent. The Court, in reversing, concluded that the statute did demand a showing of intent because the statute did not cover "unwitting, inadvertent, and unintended conversions." *Id.* at 270, 72 S.Ct. at 253. The Court went on to point out: "Knowing conversion adds significantly to the range of protection of government property without interpreting it to furnish unwitting conversions." *Id.* at 272, 72 S.Ct. at 254. It is clear that intent was the critical element of the offense with which Ribas was charged.

The colloquy between the court and Ribas at the conclusion of the plea hearing should have alerted the court that Ribas was claiming that, at the time the trousers were sold to third parties, he did not intend to commit a crime. He told the court: "And although it has happened that it is a crime, at that instant I was not consciously stealing and selling, but, obviously I made a mistake that is typified as a crime." Upon hearing this, the court, instead of asking him what his intent was at the time, suggested that looking back *in retrospect* Ribas now knew that he "obviously did something wrong and against the law." But what Ribas knew at the time of the plea hearing does not establish criminal intent at the time the trouser sales were made. Ribas had suggested to the court that he did not intend to commit the crime charged. This was tantamount to asserting his innocence. Instead of accepting the plea the court should have, at the very least, inquired as to Ribas' intent at the time the trousers were sold.

We recognize that Ribas was an attorney and an engineer, which means that he was well educated and presumably intelligent. This, however, cannot erase the manifest errors made by the district court in two critical areas of the Rule 11 colloquy. The element of scienter is very important in a case in which the property is lawfully in the possession of the defendant, and whether or not a crime has been committed depends almost entirely on the defendant's understanding of what he was entitled to do with the property. This can be and usually is a complicated matter when one is dealing with government contracts and procurement regulations. In a somewhat similar case in the Fifth Circuit brought under 18 U.S.C. § 641, the court reversed defendants' convictions. After pointing out that this kind of case was civil, rather than criminal in nature, the court stated:

> The government indicted appellants on the theory that the title vesting clause truly vested title, and gave full ownership rights to the government for materials upon which progress payments had been advanced. The title vesting provision of the Federal Acquisition Regulations creates no more than a security interest in the government's favor, and cannot be, under the facts of this case, a basis for prosecution under 18 U.S.C. § 641. Appellants' convictions are REVERSED.

*United States v. Hartec Enterprises, Inc.,* 967 F.2d 130, 134–35 (5th Cir.1992). We of course do not intimate that *Hartec* applies to the case before us. We quote it only to emphasize that during the plea colloquy a proper explanation of the scienter element is more than mere formality.

We think that the two erroneous statements by the district court combined to create a core violation of Rule 11 and were so fundamentally defective as to require reversal. *United States v. Raineri,* 42 F.3d at 41 and 45.

We are fully cognizant of the case of *United States v. Japa,* 994 F.2d 899, 903–04 (1st Cir.1993), in which we held that the omission of an intent inquiry by the district court, combined with the failure of the prosecutor to provide in the proof statement any reference to a critical fact in one of the counts of the indictment, did not affect a substantial right of the defendant under Fed.R.Crim.P. 11(a). *Japa* is readily distinguishable. Count Two of the indictment in *Japa* charged that defendant did knowingly and intentionally possess 500 grams of cocaine "and did so within 1,000 feet" of a school. Japa was not asked during the plea hearing whether he intended to possess and distribute cocaine within 1,000 feet of a school. We noted that the presentence report stated that defendant's apartment was within 1,000 feet of a

school yard, and that defendant did not object to this statement. Another factor in our ruling was that defendant admitted in response to a question by the court in Count One (conspiracy) that he and the other alleged conspirator possessed and intended to distribute 500 grams of cocaine. The admitted facts made it clear that the cocaine referred to in Counts One and Two was the same and that the distribution would start at defendant's apartment. We followed *United States v. Zorilla*, 982 F.2d 28, 30–31 (1st Cir.1992), and held:

> that information in the presentence report and/or adduced at the probable cause hearing was sufficient to satisfy the elements of the crime charged even though the district court judge failed to establish a factual basis for the plea at the hearing.

*Japa*, 994 F.2d at 904.

In the case before us there is nothing in the presentence report indicating that Ribas intended to convert and steal the trousers from the United States. We have reviewed carefully the extensive testimony and affidavits adduced at the hearing on the motion to withdraw the guilty plea. We are satisfied that there is no basis for finding that the guilty plea was involuntary due to pressure or turmoil. The evidence shows that the defendant consistently claimed that he was innocent of any wrong-doing. Indeed, his protestations of innocence continued through the sentencing hearing. This is not a case in which claims of innocence have been conjured up after the fact for purposes of taking advantage of some technical inadequacy in the plea colloquy. Nor is this a situation where the motion to withdraw the plea has its genesis in the sentence. Rather, unlike the defendant in *Japa*, Ribas moved to withdraw his plea before sentencing.

Finally, we note that the government would not seem to be prejudiced by the delay in starting trial. Our review of the record shows that the evidence in this case will mainly be documentary. The government does not have to rely on the vagaries of the memory of witnesses. The key evidence will be the written contracts between Ribas and the government and the applicable procurement regulations.

## CONCLUSION

We find that there was a fair and just reason for allowing Ribas to withdraw his plea. *See* Fed.R.Crim.P. 32(d).

The judgment of the district court is vacated and the case is remanded for trial, which shall be held before another judge.

***So Ordered.***