UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 94-1298

 UNITED STATES,

 Appellee,

 v.

 ROY GRAY,

 Defendant - Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. A. David Mazzone, Senior U.S. District Judge] 

 

 Before

 Torruella, Chief Judge, 

 Cyr and Stahl, Circuit Judges. 

 

 Jamie Ann Sabino, with whom Klibaner and Sabino, was on 
brief for appellant.
 Roberta T. Brown, Assistant United States Attorney, with 
whom Donald K. Stern, United States Attorney and Thomas C. 
Frongillo, Assistant United States Attorney, were on brief for 
appellee.

 

 August 16, 1995
 

 TORRUELLA, Chief Judge. Appellant Roy Gray challenges TORRUELLA, Chief Judge 

the district court's denial of his motion to withdraw his plea of

guilty to charges of conspiracy to distribute cocaine and

distribution of cocaine. Because we find that Gray reasonably

misunderstood the consequences of his guilty plea, we remand to

the district court for further proceedings.

 BACKGROUND BACKGROUND

 On January 20, 1993, a federal grand jury returned an

indictment charging Gray with one count of conspiracy to

distribute cocaine base, in violation of 21 U.S.C. 846, and one

count of distribution of cocaine and aiding and abetting, in

violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. 2,

respectively. Gray was arrested on April 8, 1993, and pled not

guilty at his arraignment. On October 18, 1993, the scheduled

trial date, Gray changed his plea to guilty as to both charges.

 At his change of plea hearing, the court asked Gray a

series of questions pursuant to Fed. R. Crim. P. 11. In response

to these questions, Gray stated that he had attended school

through the "eighth or ninth grade;" he denied taking any

medicine, drugs, or alcohol on the day of the hearing, and stated

that he had not been treated recently for any mental condition or

mental illness. Gray also stated that he had no trouble

understanding the court's questions.

 The court advised Gray of his rights in specific

detail, and informed him that he would waive these rights when he

pled guilty. Gray stated that he understood his rights as they

 -2-

had been explained, that he understood that by pleading guilty he

would lose those rights, and that he gave up those rights freely

and voluntarily.

 The government then summarized the evidence that it

would have offered if Gray's case had gone to trial, and the

court explained the nature of the charges.

 The court asked Gray if he was entering his guilty plea

freely and voluntarily, to which Gray answered yes. With respect

to Gray's possible sentence, the following colloquy took place:

 COURT: Do you believe it is in your best
 interest to enter a plea of guilty at
 this time? 

 GRAY: Yes, your Honor. The reason why I
 am pleading guilty is like: Take it to
 trial and let the jury and the tape with
 me on the tape talking, I don't stand no
 chance. I'd rather plead out, your
 Honor.

 COURT: So you believe then, in the light
 of the evidence on the tapes and
 otherwise, that it is in your best
 interest to plead guilty even if you have
 some feelings about what you were really
 doing at the time, what was really going
 on at the time; is that right, sir?

 GRAY: Yes, sir. And I rather plea.

 COURT: Well, with that understanding in
 mind, do you still enter your plea freely
 and voluntarily?

 GRAY: Yes, your Honor.

 COURT: Do you understand what the
 maximum punishment can be?

 GRAY: Not exactly, your Honor.

 COURT: The maximum punishment is ten
 years to life.

 -3-

 GRAY: Yes, your Honor.

 COURT: And a fine of up to $4 million
 dollars -- $8 million?

 GRAY: Yes, your Honor.

 COURT: And a special assessment of $50
 on each count, do you understand?

 GRAY: Yes, your Honor.

 COURT: Do you understand the matter of
 your sentence is up to me?

 GRAY: Yes, your Honor.

 COURT: That I am not bound by the
 agreement that you have reached with the
 government?

 GRAY: Yes, your Honor.

 COURT: And, also, do you understand,
 sir, that you might be subject to
 deportation?

 GRAY: Yes, your Honor.

 The court subsequently found that: 1) Gray's plea was

made freely and voluntarily; 2) Gray understood the nature of the

charges against him and the nature and consequences of his plea;

3) Gray was competent to enter his plea; 4) Gray understood his

rights, and had freely and voluntarily waived them; and 5) the

factual basis for the guilty plea was adequate, and that Gray had

indicated that it was in his best interest to enter a plea of

guilty.

 Thirty-six days later, on November 23, 1993, Gray moved

to withdraw his plea, alleging that: 1) he did not understand

the plea agreement which he signed; 2) he took no part in the

sale of drugs as part of the alleged conspiracy; and 3) he did

 -4-

not understand that the consequences of his plea, specifically as

to his sentence. On February 3, 1994, the district court held a

hearing on Gray's motion. At the hearing, the arguments

proffered by Gray's counsel focused almost exclusively on the

second of these claims and Gray's assertions of innocence at his

change of plea hearing. Essentially, Gray argued that he had

only pled guilty because his co-defendants and defense counsel

had suggested that it was the best course of action. The

district court denied Gray's motion to withdraw his guilty plea.

In so doing, the court pointed out that it had found that Gray

had understood what he was doing and had pled guilty because he

felt it to be in his best interests to do so. The district court

explained to Gray that "there is no question in my mind that you

were hesitant in pleading; but I have to conclude that your

hesitation was brought about not so much from your protested

innocence as much as it is from the penalty that you faced."1

 ANALYSIS ANALYSIS

 A. Applicable Legal Principles A. Applicable Legal Principles 

 While a defendant has no absolute right to withdraw a

guilty plea, United States v. Ribas-Dominicci, 50 F.3d 76, 78 

(1st Cir. 1995), a district court may allow such a request upon a

showing of "a fair and just reason." Fed. R. Crim. P. 32(d); see 

also Ribas-Dominicci, 50 F.3d at 78; United States v. Cotal- 

Crespo, 47 F.3d 1, 3 (1st Cir. 1995). We have recently 

  

1 The Presentence Report for Gray had not yet been prepared by
the date of the hearing on Gray's motion to withdraw his plea.

 -5-

reiterated that the factors to be considered in determining

whether there is such a reason are: 1) the force and

plausibility of the proffered reason; 2) the timing of the

request; 3) whether the defendant has asserted his legal

innocence; and 4) whether the parties had reached a plea

agreement. Cotal-Crespo, 47 F.3d at 3-4. These factors are 

relevant to the ultimate issue to be addressed, namely, whether

the plea was "knowing, voluntary and intelligent within the

meaning of [Fed. R. Crim. P.] 11." Id. at 3. 

 We have explained that by entering a guilty plea, a

defendant effectively waives several constitutional rights. For

that waiver to be valid, the plea must amount to a voluntary and

intentional relinquishment or abandonment of a known right or

privilege. Id. at 4 (citing McCarthy v. United States, 394 U.S. 

459, 466 (1969)). Rule 11 was intended to ensure that a

defendant who pleads guilty does so with an understanding of the

nature of the charge and the consequences of the plea. Id. at 4. 

We have identified the three "core concerns" of Rule 11: 1)

absence of coercion; 2) the defendant's understanding of the

charges; and 3) the defendant's knowledge of the consequences of

the guilty plea. Id. While technical violations of Rule 11 may 

often be deemed harmless, a total failure to address one of Rule

11's "core concerns" mandates that the guilty plea be set aside.

Id. In the absence of such a "total failure," the question to be 

determined is whether deficiencies in the Rule 11 hearing

 -6-

affected the defendant's "substantial rights." Fed. R. Crim. P.

11(h); see also Cotal-Crespo, 47 F.3d at 5. 

 In determining whether there has been a violation of

one of the core concerns of Rule 11, we review the totality of

the circumstances surrounding the Rule 11 hearing at which the

defendant pled guilty. Cotal-Crespo, 47 F.3d at 4. We have 

explained that "[w]hat is critical is the substance of what was

communicated by the trial court, and what should reasonably have

been understood by the defendant, rather than the form of the

communication." Id. at 4-5. 

 We will reverse a district court's decision disallowing

the withdrawal of a guilty plea only upon a showing of a

"demonstrable abuse of discretion." Id. at 5. The district 

court's subsidiary findings of fact in connection with the plea-

withdrawal motion are reviewed only for clear error. Id. With 

these principles in mind, we turn to Gray's claims.

 B. Was Gray's guilty plea "voluntary B. Was Gray's guilty plea "voluntary 
 and intelligent"? and intelligent"? 

 Gray claims that because of certain deficiencies in his

Rule 11 hearing, his guilty plea was not given voluntarily and

intelligently. Although Gray offers several grounds to support

his claim, we find that only one of them merits discussion. In

his motion to withdraw his plea, Gray stated essentially that he

did not understand that he was pleading to a crime with a minimum

ten-year sentence. He claims now that this misunderstanding of

the consequences of his plea "tainted his decision to plead

 -7-

guilty," and constitutes a violation of one of Rule 11's core

concerns. Although it is a close question, we agree.

 When asked by the court at his Rule 11 hearing whether

he understood "what the maximum punishment" could be, Gray

responded, "Not exactly," thus alerting the court to his

uncertainty about the consequences of his plea. In its attempt

to explain these consequences, however, the court mistakenly

stated, "The maximum punishment is ten years to life." (Emphasis 

added). This statement was incorrect; in fact, the mandatory 

minimum sentence for the crime to which Gray pled guilty was ten 

years, and the court had no discretion over this minimum

sentence. Moreover, this incorrect explanation was exacerbated

by the court's subsequent statement to Gray that "the matter of

your sentence is up to me," implying that the length of the

sentence was discretionary rather than mandatory. We think that

based on these statements, a defendant could have reasonably

concluded that ten years was the maximum sentence, at the 

discretion of the court, and that by pleading guilty it was

possible that he could receive a sentence of less than ten years.

 The government concedes that the district court's

incorrect explanation of Gray's sentence was "short of ideal." 

The government nevertheless argues that, when considered in light

of the fact that Gray had that morning signed the plea agreement,

which specifically sets forth the applicable minimum mandatory

sentence of ten years, the court's mistake should be deemed

harmless. This argument ignores the plain language of Rule 11,

 -8-

stating that "the court must address the defendant personally in

open court and inform the defendant of, and determine that the 

defendant understands," the matters enumerated in Rule 11. Fed. 

R. Crim. P. 11(c) (emphasis added). We have held that "reliance

on a written document is not a sufficient substitute for personal

examination by the court" in ascertaining that Rule 11's core

concerns are addressed. United States v. Medina-Silverio, 30 

F.3d 1, 3 (1st Cir. 1994) (internal quotations omitted). When

asked at the hearing, Gray clearly stated under oath that he did

not fully understand his potential sentence, despite the fact 

that he had signed the plea agreement that morning. Gray's

signature on the plea agreement is therefore insufficient

indication of his actual understanding of the consequences of his

plea, and thus cannot cure or obviate the court's mistaken

explanation of the applicable sentence.

 We think that the substance of what was communicated to

Gray, specifically the district court's incorrect and misleading

explanation of the mandatory minimum sentence, could have led a

reasonable person to misunderstand the consequences of his guilty

plea in this context, thus implicating one of Rule 11's core

concerns.

 Although the court's error is not a "total failure to

address" one of Rule 11's core concerns, see Cotal-Crespo, 47 

F.3d at 5, we cannot say with any certainty that Gray's

reasonable misunderstanding of his sentence did not affect his

substantial rights within the meaning of Rule 11. In fact, the

 -9-

record indicates, and the government even suggests, that Gray

decided to withdraw his guilty plea only after learning the true

consequences of his decision through discussions with his

counsel. It seems likely, at the very least, that if Gray had

clearly and accurately understood the consequences of a guilty

plea, he would have decided differently. The court's error

leading to Gray's misunderstanding therefore affected Gray's

substantial rights, and Gray's guilty plea cannot be said to have

been given voluntarily and intelligently.2 Accordingly, we hold

that the district court erred in denying Gray's motion to

withdraw his guilty plea.3

 The judgment of conviction and sentence is vacated. 

The guilty plea is set aside and the case is remanded for further 

proceedings consistent with this opinion. 

  

2 We recently rejected a somewhat similar challenge as harmless
error. In United States v. L pez-Pineda, 55 F.3d 693 (1st Cir. 
1995), the appellant contended that the Rule 11 plea colloquy had
been deficient due to the failure of the district court to
identify the applicable minimum mandatory sentence. Id. at 696. 
The four-part test for assessing such Rule 11 claims
(plausibility of grounds for requesting plea change, timing of
request, assertion of innocence, and legal sufficiency of
original Rule 11 hearing), requires a different result in this
case. First, Gray advances a plausible basis for requesting
vacation of his guilty plea and for failing to understand the
sentencing consequences of his guilty plea, see supra at 8-9, 
whereas L pez-Pineda tendered a highly implausible explanation.
Second, L pez-Pineda complained only after his sentence had been
imposed. Id. at 697. Third, unlike Gray, L pez-Pineda asserted 
no claim of innocence. Id. 

3 Because we find that Gray misunderstood the consequences of
his guilty plea and reverse on this basis, we do not address his
other arguments on appeal.

 -10-