USCA1 Opinion

 

 September 16, 1996 [Not for Publication] [Not for Publication] United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-1602 UNITED STATES, Appellee, v. JOSEPH DAVIS, A/K/A JOSEPH MILLS, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Mary M. Lisi, U.S. District Judge] ___________________ ____________________ Before Selya and Stahl, Circuit Judges, ______________ and Torres,* District Judge. ______________ ____________________ David L. Martin on brief for appellant. _______________ Sheldon Whitehouse, United States Attorney, Margaret E. Curran, __________________ Assistant United States Attorney, and Gerard B. Sullivan, Assistant ___________________ United States Attorney, on brief for appellee. ____________________ September 13, 1996 ____________________ ____________________ *Of the District of Rhode Island, sitting by designation. STAHL, Circuit Judge. A jury convicted appellant STAHL, Circuit Judge.  _____________ Joseph Davis of heroin trafficking and firearms offenses. Davis appeals the district court's denial of his motion for a new trial, which was based on his claim of ineffective assistance of counsel at trial. Because we conclude that any deficiencies in counsel's performance did not result in prejudice to Davis, we affirm. I. I. __ Factual Background Factual Background __________________ In early January 1994, Detective David Lussier, a Providence, Rhode Island, police officer specializing in narcotic cases, began investigating suspected heroin dealer Joseph Davis, a/k/a Joe Mills ("Davis"). The suspected trafficking was being conducted out of an apartment that Davis shared with his mother and niece. Detective Lussier conducted sporadic surveillance of the apartment, stopping by at various times of the day and night for five to thirty minutes. He frequently observed a black BMW automobile parked in front of the apartment, and on several occasions saw Davis park the BMW and thereafter use his keys to enter the apartment. To confirm his suspicions, Detective Lussier successfully orchestrated a controlled buy of heroin from Davis at the apartment. Lussier searched the buyer, a confidential informant, before he entered the apartment and -2- 2 then watched him enter, exit, and return directly to Lussier's car. The informant then delivered a packet of heroin to Lussier, stating that it came from "Joe."  Relying on the controlled buy to establish probable cause, Lussier obtained a warrant to search Davis's apartment. On January 24, 1994, several Providence police officers executed the search warrant at Davis s apartment. The police knocked on the door, and Davis s niece, the only one home at that time, admitted the officers. The apartment had two stories and a basement. The bedrooms on the upper level were used by Davis's mother and niece. The basement was divided into a laundry/storage area and a third bedroom, apparently used by Davis. The police found numerous drug-related items in the basement bedroom area, including seventy-seven packets of heroin, twenty-three bags of marijuana, a coffee grinder used to mill heroin, a respiratory dust mask,1 a stamp commonly used to mark heroin packets, and thousands of empty glassine packets. The police also seized from the bedroom area $10,563 in cash ($3,663 in a bank shaped like a large Coca-Cola bottle and $6,900 in a "Snickers" box), two gold chains (also in the "Snickers" box), and a loaded .38 caliber revolver in a box on the second shelf of an entertainment center. A number of found  ____________________ 1. One of the officers who searched the apartment testified at trial that these masks are used by persons who process and package heroin in order to avoid inhalation of heroin dust. -3- 3 items established that the basement bedroom was Davis's (letters, a birthday card, a photograph album, a bill for pager service, etc.). Detective Lussier called the pager number listed on the bill several times after the raid and before Davis s arrest. Each time, Lussier, who had known Davis for four or five years, recognized the voice returning the page as that of Davis. Moreover, the caller confirmed for Lussier that he was Joe Mills, another name used by Davis. The police seized the BMW and found Davis's driver's license inside, which bore the address of the apartment. Providence police officers arrested Davis on March 4, 1994, about six weeks after the search. The arresting officers seized from Davis forty-two packets of heroin marked with the brand name "Snake" from the front pocket of the sweatshirt Davis was wearing. They also seized a pager and $300 in cash. At the police station, Davis gave the apartment as his residence address. Detective Lussier subsequently interviewed Davis and told him that they had seized heroin from the apartment. Davis responded (to the effect that) "You only got 72 bags." Lussier also told Davis they seized marijuana. Again, Davis responded, "You only got about 20 bags." Finally, Lussier told Davis that the gun made the problem more serious. Davis rejoined, "The revolver wasn't hidden. It was only a .38, just for protection." Detective Lussier had not told Davis the quantity of the -4- 4 drugs seized or the caliber of the gun prior to Davis s admissions. The arresting officer also turned the seized pager over to Detective Lussier. Lussier dialed the number he had previously used to page Davis and keyed in a three- digit code. The code appeared on the pager s display. It is also undisputed (based on trial stipulations) that: (1) Davis had been convicted of a felony prior to January 24, 1994, (2) the R.G. Industries .38 caliber revolver had traveled in and affected interstate commerce and it had been test-fired and worked, and (3) the packets seized from the apartment, the residue on the coffee grinder, and the packets seized from Davis s person all contained heroin. II. II. ___ Procedural Background Procedural Background _____________________ On March 17, 1994, a federal grand jury charged Joseph Davis with two counts of possession with intent to distribute heroin in violation of 21 U.S.C. 841(a) (Counts One and Four), one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. 922(g) (Count Two), and one count of using a firearm during a drug trafficking crime in violation of 18 U.S.C. 924(c) (Count Three).2 On August 2, 1994, after a two-day jury trial at  ____________________ 2. Count Three was eventually dismissed, and Davis's ultimate sentence adjusted accordingly, in light of Bailey v. ______ United States, 116 S. Ct. 501 (1995) (clarifying the meaning _____________ of "use" of a firearm during drug trafficking under 18 U.S.C. 924(c)). -5- 5 which Davis presented no witnesses or evidence, Davis was convicted on all four counts. On August 11, 1994, Davis filed a pro se motion for ______ a new trial, alleging that he had received ineffective assistance of counsel. The district court denied the motion. Davis subsequently discharged his retained trial counsel, and new counsel was appointed by the court. Davis s new counsel moved for reconsideration of the denial of the motion for a new trial. The district court agreed to reconsider and heard arguments on the merits of the ineffective assistance claim. The district court found both that trial counsel's performance was adequate and that, even if it had been deficient, Davis suffered no prejudice. III. III. ____ Discussion Discussion __________ Davis appeals the district court's denial of his motion for a new trial, arguing that he received ineffective assistance of counsel at trial.3 Typically, the courts of appeal hear claims of ineffective assistance on collateral review, because such claims usually are not presented to and decided by the district court prior to the direct appeal. See United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993), ___ _____________ ____  ____________________ 3. Davis also appeals certain aspects of his sentence under the United States Sentencing Guidelines, but our review of the record reveals that the asserted errors have been corrected by the district judge. Thus, we need not address them here. -6- 6 cert. denied, 114 S. Ct. 1839 (1994). In this case, though, _____ ______ Davis had new counsel appointed after trial, and the ineffective assistance claim was briefed and argued to the district court, which determined that trial counsel's performance was neither deficient nor prejudicial. Accordingly, "the record is sufficiently developed to allow reasoned consideration of the claim." Id.  ___ A. Governing Principles  ________________________ To establish a Sixth Amendment violation of the right to effective assistance of counsel, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that prejudice resulted. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Scarpa __________ __________ ______ v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994), cert. denied, 115 S. ______ _____ ______ Ct. 940 (1995). Among the basic duties of an attorney is "to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." Strickland, __________ 466 U.S. at 688. In evaluating an attorney's performance, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689 (quoting ___ Michel v. Louisiana, 350 U.S. 91, 101 (1955)). We must make ______ _________ -7- 7 "every effort . . . to eliminate the distorting effects of hindsight" and to evaluate counsel's conduct from his or her perspective under the circumstances as they existed at that time. Id. "The proper measure of attorney performance ___ remains simply reasonableness under prevailing professional norms." Id. at 688. ___ A defendant establishes prejudice from counsel's substandard performance if he or she can show that, but for counsel's errors, "there is a reasonable probability . . . that the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. We do not ___ focus solely on the outcome; however, we also consider "whether the result of the proceeding was fundamentally unfair or unreliable." Scarpa, 38 F.3d at 16 (quoting ______ Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). "In making ________ ________ this determination, a court . . . must consider the totality of the evidence before the judge or jury." Strickland, 466 __________ U.S. at 695.4 We need not decide if counsel's performance  ____________________ 4. There is some uncertainty surrounding the standard of appellate review. Strickland instructs that "both the __________ performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact," 466 U.S. 668, 698 (1984), and, accordingly, this court has stated that "we review these issues de novo," Matthews v. Rakiey, 54 F.3d __ ____ ________ ______ 908, 916 (1st Cir. 1995). Five months earlier, however, this court explained that before Strickland, "we reviewed a __________ district judge's determination as to competence only for clear error," but "[s]ince Strickland, the standard of review __________ may be more rigorous where the issue is not a matter of -8- 8 was deficient if it is apparent that no prejudice resulted from the alleged errors. Id. at 697. ___ B. Trial Counsel's Alleged Deficiencies ________________________________________ Davis propounds ten specific deficiencies in trial counsel's performance: (1) failing to discuss with Davis, before trial, the evidence and important tactical decisions; (2) failing to challenge the legality of the search of the apartment; (3) failing to seek dismissal of the jury panel based on allegedly prejudicial statements by prospective jurors during jury selection; (4) making an incoherent opening statement; (5) making prejudicial statements about the defendant at trial; (6) failing to object to inadmissible, prejudicial testimony about outstanding warrants for prior charges; (7) conducting ineffective and damaging cross-examination; (8) failing to call witnesses to challenge the credibility of government witnesses; (9) failing to present a witness (Davis's mother) to explain the presence of the pistol; and (10) failing to request a limiting instruction regarding Davis's prior convictions.  ____________________ historical fact but of deciding how much competence is enough." United States v. Raineri, 42 F.3d 36, 43 (1st Cir. _____________ _______ 1994); cf. United States v. McGill, 11 F.3d 223, 226 n.2 (1st ___ _____________ ______ Cir. 1993) (comparing alternative interpretations of Strickland's impact on our standard of review). __________ Here, given the strength of the evidence against Davis, we focus on whether the alleged deficiencies in counsel's performance were prejudicial. Our review is extensive, but we are not obliged to decide which standard of review obtains, because the result is the same under any standard. -9- 9 C. Analysis ____________ We have carefully reviewed all of the alleged deficiencies in counsel's performance, as well as the evidence presented at trial. Although Strickland's __________ "prejudice prong" is the basis for our decision, some comments on counsel's performance are in order.  Trial counsel's performance could undoubtedly have been better; in particular, he could have refrained from telling the jury that his client was a heroin dealer with a lengthy criminal record. There was, however, some method in counsel's apparent madness. That seemingly prejudicial statement was concededly part of a strategy to convince the jury that the police had framed Davis, both at the time of the search and upon his arrest, because he was a known convicted felon. Counsel also argued and attempted to show through cross-examination that Davis had too much experience with the criminal justice system to make the damaging statements that the police claimed he made (e.g., "You only ____ got 72 bags"). Trial counsel's statement that this was "a prosecutor's dream case" and therefore "too good to be true" was also part of the same strategy. Counsel tried to convince the jury that the police had lied and planted the evidence found in the apartment and on Davis's person. As further support for the claim that his client had been framed, counsel pointed to the fact that no fingerprints were -10- 10 found on the heroin-related items allegedly seized at the apartment. While counsel's approach ultimately proved unsuccessful, we are hard pressed to think of an alternative trial strategy in light of the overwhelming evidence against Davis. Even assuming, however, that counsel's performance was constitutionally deficient, we ultimately find that there was no prejudice to Davis. The evidence against Davis was so overwhelming that, as to nine of the ten alleged errors, there is no reasonable possibility that the jury would have acquitted Davis even without counsel's allegedly deficient performance. The remaining error, the failure to move for suppression of the evidence resulting from the apartment search, cannot be dismissed on the basis of overwhelming evidence. Thus, we will discuss that claim in some depth. We also examine whether a constitutionally adequate trial lawyer could have convinced the jury that the police lied and fabricated evidence. As to all the other asserted errors, there is no need to treat them individually -- we find the evidence of Davis's guilt (if believed) to be so compelling that he utterly fails to satisfy the prejudice prong of Strickland. See 466 U.S. at 696 ("[A] verdict or conclusion __________ ___ only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."); see also United States v. Jackson, 918 F.2d 236, ___ ____ _____________ _______ -11- 11 243 (1st Cir. 1990) (holding that overwhelming evidence of defendant's guilt negated any reasonable probability that error by counsel affected outcome of trial). Although Davis points to a plethora of asserted deficiencies, he concedes that trial counsel's errors were non-prejudicial if one accepts the testimony of the four police officers about the seizures of heroin and a gun at the apartment, and the heroin on Davis's person upon arrest. Boiled down to its essence, Davis's appeal is founded upon his claim of extensive police perjury, and an assertion that competent counsel could have either (1) suppressed the search evidence because of that perjury or (2) obtained a verdict of acquittal by convincing the jury that the police lied and fabricated essential evidence. Thus, our task is to assess Davis's showing of police perjury and evidence fabrication. We first analyze, and reject, Davis's police perjury arguments in the context of a potential Fourth Amendment challenge to the apartment search. We then use that analysis to conclude that there is no reasonable probability that, in the absence of these purported errors by counsel, a jury would have accepted the perjury arguments and acquitted Davis. 1. Suppressing the Search Evidence ___________________________________ Davis argues that the warrant to search the apartment was invalid because Detective Lussier lied about -12- 12 conducting the controlled buy. First, Davis points out that Lussier's warrant affidavit contained little detail about the controlled buy or the informant; in particular, the affidavit did not provide the date of the controlled buy or the amount of heroin or currency involved.5 Second, Davis asserts that Lussier's warrant affidavit contained a logical inconsistency concerning Davis's physical description that suggests fabrication. The affidavit stated that Davis was 5'8" tall and weighed 145 pounds, when in fact he was 5'11" and 170 pounds. The affidavit also stated that the informant, after completing the buy, "provided me with a physical description matching ________  ____________________ 5. The affidavit stated: Within the last few days I contacted a confidential and reliable informant, this informant has in the past provided me with information that has resulted in successful narcotics arrest [sic], and narcotics seizures. I spoke with this informant who agreed to make a controlled purchase from apartment F-8 in Wiggins Village. I drove the informant into the area of the apartment and searched him/her for any contraband or currency. After finding none I provided the informant with US currency and sent him/her to the apartment. I then watched as the informant knocked and went into the apartment. After about 5 to 10 minutes the informant exited the same door and walked directly to my vehicle. Once inside the informant handed me a sum of heroin, stating that it came from "Joe." The informant then provided me a physical description matching Joe Davis . . . . -13- 13 Joe Davis" (emphasis added). Davis's argument is somewhat subtle: if there had really been a controlled buyer who dealt with Davis, the buyer would have accurately described Davis, and that accurate description would not have "matched" Joe Davis in Lussier's mind, because Lussier was mistaken about Davis's actual height and weight. Thus, Davis contends that Lussier fabricated both the confidential informant and the controlled buy. Davis also makes several other arguments about police perjury. Although these arguments relate to events that occurred after Lussier filed the warrant affidavit, we address them here because Davis argues that the subsequent conduct of the police corroborates the falsity of the affidavit. After Davis was arrested, the arresting officers seized the packets of heroin, the pager, and three hundred dollars. About sixty-six dollars, however, was left in Davis's possession after the initial post-arrest search, apparently not discovered when the officers found the other items. Davis argues that the officers would have found the sixty-six dollars if they had in fact searched Davis and found heroin and another wad of cash. Therefore, Davis asserts, the arresting officers lied about finding heroin on Davis, and they fabricated the physical evidence presented at trial. -14- 14 Davis also contends that the police lied when they said that the "Coca-Cola" bank was found in Davis's basement bedroom, providing as support for that contention affidavits from Davis's mother, sister, and a neighbor stating that the bank belonged to the mother and was kept in her upstairs bedroom. None of those three testified at trial. Finally, Davis accuses the police of stealing nearly $500 from his mother's bedroom, based on his mother's affidavit that the money was missing after the search. When an ineffective assistance claim is grounded on a failure to litigate a Fourth Amendment claim, the defendant must prove "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Kimmelman v. Morrison, 477 U.S. 365, 375 (1985). We assume _________ ________ for the sake of argument that the verdict would have been different if the evidence resulting from the search was excluded, and we focus on whether an effective counsel could have successfully suppressed the evidence resulting from the apartment search on Fourth Amendment grounds. Davis argues that, had his counsel requested it, he would have been entitled to a Franks hearing, the first step ______ in seeking to suppress the evidence obtained in the search. Under Franks v. Delaware, 438 U.S. 154, 155-56 (1978), a ______ ________ defendant may overcome the presumption of validity -15- 15 surrounding affidavits that support search warrants and obtain an evidentiary hearing, if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Here, of course, the allegedly false statement is Detective Lussier's assertion that a controlled buy was conducted at Davis's apartment, which was the only basis for probable cause in the affidavit.  We hold, however, that Davis's allegations of perjury by Lussier do not amount to the "substantial preliminary showing" required for a Franks hearing. The ______ Supreme Court explained in Franks that: ______ To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. Id. at 154. Davis's showing of falsity in the Lussier ___ affidavit is based on (1) the lack of detail about the -16- 16 circumstances of the controlled buy, (2) the error in Lussier's account of Davis's "approximate" height and weight coupled with the statement that the controlled buyer gave a "matching" description, and (3) the assertedly dishonest subsequentpolice conduct. As we explain, this is not enough. While further detail about the controlled buy might have been desirable, the lack of specificity about the date of the buy or the quantity involved is not necessarily probative of falsity. The concern for keeping the buyer's identity confidential is a more likely explanation for the lack of those details. See United States v. Carty, 993 F.2d ___ _____________ _____ 1005, 1008 (1st Cir. 1993) (district court credited trial testimony that it was "customary to avoid precise specification of the dates of controlled buys in order to protect the identity of informants"). Moreover, Lussier's affidavit did describe the means by which he "controlled" the buy (i.e., a prior search of the confidential informant and personal observation of him before entering and after exiting Davis's apartment). See United States v. Rodgers, 732 F.2d ___ _____________ _______ 625, 630-31 (8th Cir. 1984) (description of means of control "tended to substantiate the fact that [defendant] was selling cocaine from his residence"). We conclude that the lack of detail does not amount to a "substantial showing" of falsity in the affidavit. -17- 17 As to Lussier's misstatement of Davis's height and weight, Davis does not allege that those data were material to the warrant to search the apartment, which need only describe with particularity the place to be searched. The _____ argument, again, is that the discrepancy shows that Lussier lied about the controlled buy, without which there would have been no probable cause. This ingenious argument, however, is too thin a reed to support a claim of police perjury. Lussier's affidavit did not state in what regard the informant's description "matched" Davis (height? weight? age? race? facial characteristics? hair style? mannerisms? clothing? other distinguishing marks or features?). Moreover, the affidavit only stated that Davis was "approximately 5'8" 145" (in fact he was 5'11" and 170 pounds). The "matching" by the informant may have also been merely an approximation. Hence, because Lussier gave only an "approximate" description, and because we do not know in what sense or how closely the buyer's description "matched" that approximation, there may have been no discrepancy at all. And to the extent there was a discrepancy, it was just as likely a negligent or innocent mistake as a perjurious fabrication. The inference that Davis asks us to draw from this alleged discrepancy, that no controlled buy occurred, is too strained and too speculative. -18- 18 Davis's other allegations of police untruthfulness (i.e., the sixty-six dollars inexplicably left on Davis's person after arrest, the location of the "Coca-Cola" bank, and the money missing from Davis's mother's bedroom) do not make a substantial showing, either. It is not reasonable to infer, from the fact that sixty-six dollars was left on Davis after his arrest, that the police planted heroin on Davis. The failure of the police to find the sixty-six dollars more likely resulted from inadvertency than from a conspiracy to falsely convict Davis. And the testimony of Davis's mother, niece, and neighbor about the location of the "Coca-Cola" bank and the missing money does little to substantiate that Lussier lied about the controlled buy, even if we ignore our concerns about the potential bias of those affiants. We do not blindly assume the credibility of police officers, but Davis's assertions do not persuade us that competent trial counsel could have made a substantial showing that the warrant affidavit was falsified as part of a perjurious police conspiracy. Absent that showing, Davis would not have received a Franks hearing,6 let alone ______  ____________________ 6. We recognize that when an affidavit relies primarily on information provided by a confidential informant, a defendant will often lack the information needed to make a Franks ______ showing. See United States v. Higgins, 995 F.2d 1, 3 (1st ___ ______________ _______ Cir. 1993). In such cases, where the defendant challenges the accuracy of the affidavit but has failed to make the "substantial preliminary showing" required by Franks, the ______ court may conduct an in camera interview of the __ ______ officer-affiant, and, if necessary, of the informant. See ___ -19- 19 successfully surmounted the next hurdle, convincing the district court to suppress the evidence because of a perjured affidavit. Thus, we conclude that there is no reasonable probability that the search evidence could have been suppressed, and no prejudice suffered by Davis. 2. Convincing the Jury of Police Perjury _________________________________________ Davis's trial counsel did attempt to convince the jury that the police were lying about the evidence, but the jury evidently was not persuaded. Trial counsel cross- examined Lussier about the controlled buy and the discrepancy in the description in Davis's height and weight; he also cross-examined the arresting officer about the sixty-six dollars left on Davis's person after his arrest. He argued  ____________________ United States v. Southard, 700 F.2d 1, 10-11 (1st Cir.), ______________ ________ cert. denied, 464 U.S. 823 (1983). A district court is not _____ ______ required to do so, however; the decision whether an in camera __ ______ proceeding is needed to test the officer-affiant's credibility rests entirely with the district court. See ___ United States v. Jackson, 918 F.2d 236, 241 (1st Cir. 1990). ______________ _______ We review a district court's denial of a defendant's request for an in camera proceeding for abuse of discretion. See __ ______ ___ United States v. Valerio, 48 F.3d 58, 62-63 (1st Cir. 1995); ______________ _______ Higgins, 995 F.2d at 3. _______ Moreover, Davis has argued neither that trial counsel should have requested an in camera hearing, nor that __ ______ such a proceeding would have led to the suppression of the search evidence. And, although a "confidential informant" was used to conduct the controlled buy, there was no reliance on any information provided by the informant; rather, Lussier ___________ personally observed that the informant went into the apartment without heroin and came out with heroin. That is enough for probable cause to search the apartment, based on the officer's own perception. Thus, many of the credibility concerns that arise when probable cause is based on information provided by a confidential source are not present in this case. -20- 20 to the jury that these facts indicated that the police were lying, and that the drugs were planted on Davis.7 It is true that trial counsel did not present testimony by Davis's mother, sister, or neighbor about the Coca-Cola bank or the money allegedly stolen by the searching officers. These allegations do not, of course, directly attack the major evidence against Davis, but if believed they could have impugned the credibility of the officers involved in Davis's case. We are very doubtful, though, that a jury would have been persuaded by the testimony of Davis's mother, sister, or neighbor, for the reasons alluded to earlier. Suffice it to say that we see no reasonable probability, given the extensive evidence against Davis, that the jury would have acquitted Davis if trial counsel had presented the additional evidence of alleged police perjury, had made the perjury arguments more artfully, and had not made the other supposed errors that Davis points to. The evidence was simply too voluminous and compelling, while the argued inferences of police perjury were too speculative and tenuous. IV. IV. ___ Conclusion Conclusion __________  ____________________ 7. The trial court sustained the government's objection when Davis's counsel, in closing argument, stated "I don't know if they enjoyed planting drugs on him." However, the overall theme of the defense closing argument -- police perjury and fabrication of evidence -- was nonetheless made obvious to the jury. -21- 21 For the foregoing reasons, we conclude that none of the alleged errors by counsel resulted in prejudice to Davis, given the overwhelming record evidence of his guilt. The decision of the district court is affirmed. affirmed ________ -22- 22